**STATE of Tennessee, Appellee,**

v.

**Dwight RICE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 15, 1982.

Permission to Appeal Denied by Supreme Court July 19, 1982.

William M. Leech, Jr., Atty. Gen., Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, John Roberts, Dist. Atty. Gen., Livingston, R. Laken Mitchell, Asst. Dist. Atty. Gen., Cookeville, for appellee.

Vernon Neal (trial), Cookeville, J. H. Reneau, III (trial and appeal), Celina, for appellant.

## OPINION

WALKER, Presiding Judge.

Convicted of armed robbery and sentenced to 25 years in the penitentiary, Dwight Rice appeals to this court, contending that (1) the trial court erred in holding that he was not entitled to "statements" of state's witnesses after they had testified on direct examination; (2) the trial court erred in admitting in-court identification of appellant by two state witnesses; (3) the trial court erred in permitting the state to comment on the appellant's failure to testify; and (4) the separation of jurors and their association with one not sworn as an officer constituted reversible error.

We find no reversible error and affirm the conviction.

Since the appellant does not challenge the sufficiency of the evidence, only a brief review of the facts is necessary.

At about 4:00 a. m., November 23, 1979, a lone gunman robbed Ralph Willis, night clerk of the Rice Motor Inn, of Cookeville and fled with $153. Willis immediately reported the crime, describing the robber as a white male with collar length hair, mustache and bushy eyebrows. At about the time of the robbery, Stanley Miller and Phil Walker saw a man fitting this description at a nearby service station.

At different times officers showed a display of six photographs to Willis, Miller and Walker and each picked the appellant's photograph from it. In that photograph the appellant had long hair, sideburns and a mustache. At the time of trial, he was clean shaven and had short hair.

In court Mr. Willis identified the appellant as the man who robbed him. Mr. Walker identified him in court as the person he had seen at the service station. Mr. Miller could not identify the appellant in court.

After interviewing Willis, Miller and Walker, officers placed the results of these interviews in police reports. In his first issue, Rice argues that he was entitled to see these "statements" after the witnesses

had testified on direct examination, in accordance with Rule 16(a)(1)(E) and (F), Tenn.R.Crim.P. These provisions require prior statements of witnesses be made available to opposing counsel after direct examination for the purpose of impeachment, and define what constitutes a "statement." Thus, 16(a)(1)(F) states:

"(F) Definition.—The term 'statement' as used in paragraph (E) means:

(i) A written statement made by said witness and signed or otherwise adopted or approved by him; or

(ii) A stenographic, mechanical, electrical, or other recording of a statement, or a transcription or summary thereof, which is an essentially verbatim recital of an oral statement made by said witness."

Appellant relies upon *State v. Robinson,* 618 S.W.2d 754 (Tenn.Cr.App.1981), for the proposition that police reports are available for inspection during cross-examination. However, in *Robinson* the witness who had testified was the officer who filed and signed the police report. In the case before us, the appellant wanted to inspect police reports containing information from a police interview for the purpose of impeaching the interviewee. In regard to such a situation, this court in *State v. Robinson,* supra, stated:

"Frequently the interviewing officer will include in his report a general summary of the interviewee's oral statement, often reconstructed from memory at some point after the interview occurred. Such a summary does not meet the requirements of paragraph (F)(ii) * governing oral statements and will not qualify under paragraph (F)(i) unless after being reduced to writing it has been 'signed, adopted, or approved' by the person interviewed." 618 S.W.2d at 759

The police reports were sealed at trial after being examined by the trial court judge, and were made a part of the record for review in this court. We have reviewed these reports and conclude that they do not fall within the definition of a "statement" as stated in Tenn.R.Crim.P., Rule

16(a)(1)(F). We therefore hold that the trial court did not err in ruling that appellant was not entitled to them to impeach the state's witnesses.

■ In his next issue, the appellant argues that the trial court erred by allowing in-court identification of appellant by Mr. Willis and Mr. Walker. The appellant concedes that there were no improprieties in the photographic identifications by these witnesses. However, he asserts that there was no basis for the in-court identifications, primarily because of the drastic differences between the appearance of the man in the photograph picked by the witnesses and the appellant's appearance at trial.

Both witnesses acknowledged that appellant's appearance had changed since the robbery, but both unequivocally identified appellant as the man they had seen the morning of the offense. Each witness had an opportunity to observe appellant for several minutes. Under these circumstances exhibiting totally untainted and positive identifications, there was no error. Cf. *Bolton v. State,* 617 S.W.2d 909, 913 (Tenn.Cr. App.1981).

■ In his third issue, the appellant contends that the district attorney general and his assistant improperly commented on his failure to testify in violation of his Fifth Amendment right to remain silent.

At the close of the defense proof, the record shows:

"MR. RENEAU: If Your Honor, please, the Defendant closes in chief.

THE COURT: All right. Any rebuttal?

GEN. ROBERTS: Judge, how much longer do you expect to go tonight? I'm a little bit surprised by that announcement."

The appellant concedes in his brief that, standing by itself, the above statement by the district attorney general would not be of the utmost significance. The statement is not a direct comment upon the appel-

* (Rule 16(a)(1)(F)(ii)).

lant's failure to testify. However, it is his contention that it was reversible error for the assistant district attorney general to argue during his summation that certain testimony of Judy Kelly, a state's witness, was uncontradicted.

■ Generally, mere argument by the state that its proof is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify. *Taylor v. State,* 582 S.W.2d 98, 100 (Tenn.Cr.App. 1979); *State v. Livingston,* 607 S.W.2d 489 (Tenn.Cr.App.1980).

Ms. Kelly testified that the appellant was with her at her home between 6:00 p. m. and 7:00 p. m. on November 22, the evening before the robbery and that he had long hair, a mustache, and sideburns. Appellant had alibi witnesses who testified as to his whereabouts and appearance from noon until about 4:30 p. m., November 22, and from 7:30 p. m., November 22, until 10:00 a. m., November 23. These witnesses testified that the appellant was clean shaven with short hair before the robbery and was not in the vicinity of the Rice Motor Inn when it was robbed by a man with long hair, a mustache and sideburns.

During his closing argument, the assistant district attorney general stated in regard to Ms. Kelly's testimony:

"This is a woman who did the hair, cut the hair, of the Defendant every four or five weeks. . . . Not only that, but she saw him the night before the robbery. Now, this is uncontradicted, uncontroverted proof. No one got on that stand and said she didn't see him."

At this point appellant moved for a mistrial because the assistant district attorney general directly commented on his failure to testify. After a brief bench conference, the assistant district attorney general continued:

"Again, ladies and gentlemen, Judy Kelly's testimony with regard to what happened on the evening of November 22, 1979, and what occurred on the day of November 23, 1979, is uncontroverted by the proof. She testified that the evening of November 22, 1979, I think she said

around 6:00 o'clock p. m. or thereabouts, that Mr. Dwight Rice came to her home. . . ."

Again, appellant moved for a mistrial upon the same grounds.

In support of his contention that the remarks by the state's attorneys improperly infringed upon his right not to testify, appellant relies upon *Roy Sisco v. State of Tennessee,* Tenn.Cr.App., filed in Nashville February 15, 1980. In that case three witnesses testified that they and the defendant were together when they committed a burglary. The defendant did not testify. In closing argument, the assistant district attorney general stated:

"I am listening for a witness that contradicted the testimony of these boys that said, 'We was all together and did it.' Who denied it? Who contradicted what they told you. I don't hear any contradiction." (quotation from opinion in *Sisco v. State*)

This court in *Sisco,* supra, noted that there was no one under the proof other than the defendant who could refute the testimony of the state's witnesses, and thus the assistant district attorney general's remarks were an impermissible comment upon the defendant's failure to testify.

In the case before us, however, appellant had alibi witnesses who testified as to his whereabouts for all but about three hours of a 22-hour period. Ms. Kelly's testimony accounted for about an hour during this gap. Appellant's own witnesses could not account for his presence during this period. Thus appellant was not the *only* person who could have contradicted Ms. Kelly's statements. Therefore, the assistant district attorney general's argument was not a direct comment on the appellant's choice not to testify.

This issue is overruled.

■ In his last issue, appellant argues that the separation of jurors and the association of certain jury members with persons not sworn as officers constitutes reversible error. The jury was sequestered and the

jurors spent two nights in Cookeville motels during appellant's trial.

On one of the mornings following a night in a motel, two of the jurors who were roommates were left behind when the other jurors were taken to the courthouse. One of these jurors called the courthouse, and a sworn deputy sheriff in charge of the jury went to the motel and returned them to the courthouse. A review of the entire record indicates that these were the only two jurors who were mistakenly left behind, and that they were separated for about 15 to 20 minutes.

The two jurors testified that they did not discuss the facts of the case with anyone, nor did they hear or see any accounts of the trial during the brief separation.

The record also indicates that the Putnam County Circuit Court clerk was not a sworn jury officer, yet in his official capacity he alone transported some of the jury members during their breaks for meals. The record reflects that the jurors did not discuss the facts of the case and were not otherwise exposed to outside influences during the brief times they were alone with the circuit court clerk.

The state has met its burden of showing that no prejudice occurred during the brief separations of the jury. *Gonzales v. State,* 593 S.W.2d 288 (Tenn.1980). This issue must be overruled.

Affirmed.

BYERS and CORNELIUS, JJ., concur.