# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JULY SESSION, 1999

FILED

September 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9808-CR-00294** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **MCMINN COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CARROLL L. ROSS,** |
| **GLEN PORTER,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Sale of Cocaine) |

## ON APPEAL FROM THE JUDGMENT OF THE CRIMINAL COURT OF MCMINN COUNTY

FOR THE APPELLANT:

C. MICHAEL ROBBINS
46 North Third Street
Suite 719
Memphis, TN 38103
(On Appeal)

CHARLES M. CORN
District Public Defender

THOMAS E. KIMBALL
Assistant Public Defender
110 ½ Washington Avenue
Athens, TN 37303

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

TODD R. KELLEY
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

JERRY N. ESTES
District Attorney General
Washington Avenue
Athens, TN 37303

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# **OPINION**

This is an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant, Glen Porter, was indicted for the unlawful sale of more than .5 grams of cocaine and for possession with the intent to sell more than .5 grams of cocaine, in violation of Tennessee Code Annotated § 39-17-417. A McMinn County jury found the Defendant guilty of the offense of sale of more than .5 grams of schedule II cocaine, though the Judgment reflects a conviction for the sale of less than .5 grams of schedule II cocaine.[1] The jury then found the Defendant not guilty of possession with the intent to sell more than .5 grams of cocaine, but convicted the Defendant of the lesser included offense of simple possession of cocaine. The Defendant presents three issues for review: (1) whether the evidence is sufficient to sustain the convictions; (2) whether the trial judge erred by denying the Defendant's request for a continuance; and (3) whether the trial judge erred by permitting improper argument by the prosecution. We find these issues to be without merit and affirm the judgment of the trial court.

In August of 1997, Special Agent James Richardson of the Alcohol Beverage Commission was contacted by Detective Bill Matthews of the Athens Police Department about drug problems occurring in Athens, Tennessee. On August 29, 1997, Richardson received $100.00 from Detective Matthews, which

---

[1] While the transcript of the proceedings reflects that the jury returned a verdict of guilty of sale of more than .5 grams of schedule II cocaine, which is a Class B felony, the Judgment indicates that the Defendant was found guilty of sale of less than .5 grams of cocaine, which is a Class C felony. The Defendant was sentenced to ten years, which is the maximum sentence for a Class C felony under Range II, multiple offender, but which is below the minimum for a Class B felony under Range II. While this discrepancy does not affect the analysis of the issues presented, the case must be remanded for clarification of the record.

he was to use to attempt to purchase crack cocaine from any willing seller on Kilgore Street in Athens. Richardson drove to Kilgore Street and observed the Defendant sitting on the front porch at 520 Kilgore Street. Richardson pointed to the Defendant, who approached the vehicle and said, "What you need?" Richardson replied, "Can you do me a hundred?", which he explained meant a hundred dollars of crack cocaine. The Defendant then told Richardson to drive around the block, which he did. When he returned, Richardson exchanged the $100.00 for five pieces of what he believed to be crack cocaine. Richardson turned the substance over to the TBI crime lab, which identified it as .6 grams of cocaine base, or crack cocaine.

Richardson was equipped with an audio tape recorder during this transaction, but due to damage to the recorder, only a portion of the transaction was recorded. While Richardson's voice is clearly heard on the tape, the other person is just making noises which the prosecution described in closing argument as "kind of grunting." Richardson says on the tape that he is going to attempt to buy drugs from a black male called "Bink"; then at trial he identified the Defendant, Glen Porter, as the individual called "Bink" from whom he purchased the drugs.

After the purchase, Detective Gary Miller with the McMinn County Sheriff's Department, Detective Bill Matthews with the Athens Police Department, and another officer named Daniel Denton approached the residence at 520 Kilgore Street. Detective Miller stated that three people were on the front porch when they approached. The Defendant was sitting in a chair on the right side of the porch. Detective Miller secured the Defendant, searched him, and removed

money found on him. Beside the Defendant's foot Miller found a small fuse container which contained a substance Miller believed to be cocaine. Miller also saw a bucket next to the Defendant which contained a small container with a substance believed to be cocaine inside. After the Defendant was secured, Miller turned the evidence and money over to Detective Matthews.

Detective Matthews testified that before the purchase, he drove through the area and saw the Defendant on the porch, then reported to Richardson that it looked like Bink, or the Defendant, was the one working on that date. While Richardson was purchasing the cocaine, Matthews was in another car with Gary Miller and Daniel Denton. Matthews did not see the Defendant walk over to Richardson's car, but he did see the Defendant walk away from the car, walk over to the porch, and bend over. He did not see anything after this because he had to keep driving around. After the purchase, he approached the house with Gary Miller and Daniel Denton. While Miller secured the Defendant and Denton secured an individual walking up towards the porch, Matthews secured two individuals who were standing out in the yard. Once everyone was secured, Miller showed Matthews the cocaine he had found next to the Defendant in a bucket and beside the Defendant's foot in a fuse container. He also gave Matthews a roll of money which he had taken from the Defendant. The roll of money consisted of three hundred and some odd dollars. Matthews stated that he had given Agent Richardson five twenties at the beginning of the transaction and that he had recorded the serial numbers of those five twenties. He found five twenties with serial numbers that matched those he had recorded in the roll of money. The substances believed to be cocaine were turned over to the TBI

crime lab, which found the substances together to be 2.7 grams of cocaine base, or crack cocaine.

The only witness for the defense was the Defendant. He testified that he went to Paul Moss's home at 520 Kilgore Street between 10:00 and 10:30 on the morning of August 29 to discuss painting Moss's house. Two other people were at the house besides Paul Moss. The Defendant never saw Richardson drive up to the house, and he did not go out to any automobiles. He knows what crack cocaine is, but he did not handle any while he was there. After he had been there a while, three or four police officers came up to the house and searched all the people who were there. The police took money from the Defendant, which the Defendant said was money he had been saving from working. He had this money in his pocket on Friday because he was going to pay his parole fees and probation fees the following Tuesday, when he saw his officer. The Defendant saw the officers pull something out of a bucket, but he did not know who it belonged to or what it was. He did not see the fuse container. He said the bucket was on the porch because people had been washing Moss's cars in the past, but no one was washing cars on that day.

The Defendant said he is known by the names Brody and Glen, but he was known by the name Bink about thirty years ago. In asserting that he did not sell any cocaine to Richardson, the Defendant stated,

> you didn't hear my voice on the tape or nothing. Evidently, if I had, he had purchased anything to me, looks like you could hear my voice saying something to him. I didn't just go give him nothing and just leave. Quite naturally, if I sold him anything I'd be looking for something. I'd have some kind of conversation with him.

He claimed that there was no way marked money could have been found on him unless someone planted it. When asked if he had an opinion about why the officers would lie about him, the Defendant responded, "Yes, sir, one, for the simple reason Mr. Matthews back in '90 when I first . . . went to the penitentiary, he stopped me 12 or 13 consecutive times harassing me, but he never found any drugs on me, and that continued. That's why I, why I think so and why he's gave him my name in the first place."

## SUFFICIENCY OF THE EVIDENCE

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

To be guilty of the sale of a controlled substance, one must knowingly sell the controlled substance. Tenn. Code Ann. § 39-17-417(a)(3). The evidence in this case overwhelmingly shows that the Defendant sold $100.00 worth of crack cocaine, which was determined to be .6 grams of crack cocaine, to Special Agent Richardson. Therefore, the evidence supports a finding that the Defendant is guilty of the sale of more than .5 grams of a schedule II controlled substance, and it also supports a finding that the Defendant is guilty of the lesser included offense of the sale of less than .5 grams of a schedule II controlled substance. Richardson identified the Defendant in court as the person from whom he purchased the cocaine, and $100.00 in five marked twenty dollar bills was removed from the Defendant when he was searched. The Defendant points out that Richardson did not describe the denominations of the $100.00 he received from Detective Matthews and that the money removed from the Defendant was not described as an amount certain or in any particular denominations. He then argues, "This leaves the proof establishing that a certain five twenty dollar bills were given to Richardson by Matthews, and later those same five twenty dollar bills were returned to Matthews by Miller. It is the rankest of speculation to

conclude that in the interim between these two events it was the same five twenty dollar bills that were being handled only by the defendant." Instead of being the "rankest of speculation," it is the most reasonable inference that these same five twenty dollar bills were given to the Defendant by Richardson in exchange for crack cocaine, then removed from the Defendant by Detective Miller, who turned them over to Detective Matthews. Certainly, this is sufficient evidence that the Defendant is guilty of selling crack cocaine to Richardson.

The Defendant also argues that the evidence is insufficient because the voice on the audio tape was not identified as the Defendant's. He asserts that he denied the voice on the tape was his and that the denial was unrefuted. However, there is no clear voice to be heard on the tape. Regardless of whether the voice on the tape was identified, Richardson identified the Defendant as the person who sold him the drugs, and the marked money from the drug purchase was found on the Defendant. This is more than sufficient evidence that the Defendant is guilty of the sale of a controlled substance. Therefore, this issue has no merit.

To be guilty of simple possession of a controlled substance, one must knowingly possess the controlled substance. Tenn. Code Ann. § 39-17-418(a). Possession may be actual or constructive. State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). Constructive possession occurs when a person knowingly has "'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" Williams, 623 S.W.2d at 125 (quoting United

States v. Craig, 522 F.2d 29 (6th Cir. 1975)). "'In essence, constructive possession is the ability to reduce an object to actual possession.'" Id. (quoting United States v. Martinez, 588 F.2d 495 (5th Cir. 1979)). In this case, cocaine totaling 2.7 grams was found in a fuse container by the Defendant's foot and in a plastic container in a bucket beside the Defendant on the porch. Detective Matthews saw the Defendant walk away from Richardson's car, walk over to the porch, and bend over, though he did not see what the Defendant was doing when he bent over. Based on this evidence, a reasonable juror could conclude that the Defendant had the ability to reduce the cocaine to actual possession, thus the evidence was sufficient to convict the Defendant of possession of cocaine.

DENIAL OF CONTINUANCE

The Defendant asserts that the trial judge abused his discretion in denying his motion for a continuance. On the day of trial, the Defendant asked the trial court to continue the case because the tape of the preliminary hearing was missing. While defense counsel was not present at the preliminary hearing, he argued that the Defendant recalled one of the officers testifying at the preliminary hearing that there was a videotape of the drug sale, that now the officer denied there ever being a videotape, and that he needed a continuance to attempt to find the preliminary hearing tape. The trial judge commented that "normally we haven't been having any videotapes" in these types of cases, and that "it would be extremely rare if there was one." He stated that the officer was present to testify as to whether there was a videotape, then denied the motion for a continuance.

The granting or denial of a continuance is left to the sound discretion of the trial judge, and that decision "will not be disturbed in the absence of a clear showing of gross abuse of his discretion to the prejudice of the defendant." Baxter v. State, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973) (citations omitted); see also State v. Meeks, 876 S.W.2d 121, 130 (Tenn. Crim. App. 1993). "A reversal will be ordered on account of denial of a continuance only if the appellate court is convinced that the complaining party did not have a fair trial and that a different result would or might reasonably have been reached had there been a different disposition of the application for a continuance." Baxter, 503 S.W.2d at 230.

The Defendant argues that the denial of a continuance was an abuse of discretion because it foreclosed even the possibility of an investigation to determine whether the preliminary hearing tape could be found and whether the tape contained information which could be used in cross-examining the officers. He also asserts that the trial judge abused his discretion by denying the continuance because he did not believe a videotape existed. The Defendant does not, however, show how he may have been prejudiced because of the denial of the continuance. Therefore, the denial of the continuance is not reversible error, regardless of whether it was an abuse of discretion.

The loss of a preliminary hearing tape, in and of itself, is not prejudicial error. While Rule 5.1(a) of the Tennessee Rules of Criminal Procedure requires that preliminary hearing proceedings "be preserved by electronic recording or its equivalent" and "be made available for listening to by the defendant or defendant's counsel to the end that they may be apprised of the evidence

introduced upon the preliminary examination," failure to preserve that preliminary hearing may be harmless error. <u>State v. Butts</u>, 640 S.W.2d 37, 38 (Tenn. Crim. App. 1982); <u>see</u> <u>also</u> <u>State v. Carter</u>, 970 S.W.2d 509, 511-12 (Tenn. Crim. App. 1997); <u>State v. Bohanan</u>, 745 S.W.2d 892, 896 (Tenn. Crim. App. 1987).

The Defendant has made no showing of how the missing preliminary hearing tape actually harmed him. Instead, he simply alleges in his brief that if he had been allowed more time, the preliminary hearing tape might have been found, and it might have revealed that an officer testified at that hearing that there was a videotape of the drug transaction. He then argues that if this were the case, he could have used the testimony to cross-examine the officer during trial. This list of "ifs" and "mights" does not demonstrate that a different result would or might reasonably have been reached had there been a continuance. The evidence against the Defendant was very strong, and there is no way of determining whether any impeaching testimony existed without the preliminary hearing tape. The Defendant had time to search for the tape while preparing his motion for a new trial, and he could have presented evidence of prejudice at the hearing on the motion for a new trial if he had in fact found the tape and it revealed testimony about a videotape. Because the Defendant made no showing of prejudice, the denial of a continuance is not reversible error.

## IMPROPER ARGUMENT BY PROSECUTION

During closing argument, the prosecutor made the following statement, which the Defendant asserts was improper argument:

> Folks, Mr. Kimball has asked you to consider that these officers are lying. . . . But let me tell you why this conspiracy theory that they've got, why you can't even consider it as evidence.

-11-

> They've introduced not one ounce of evidence that there's a conspiracy theory against Glen Porter. I mean did you hear any evidence about how officers are conspiring against Glen Porter or are conspiring against drug dealers in this town?

Defense counsel objected to this statement on the ground that the prosecution was shifting the burden of proof, but the trial court overruled the objection. The prosecutor then later argued,

> I can promise you that Bill Matthews had no reason to plant fake money on Glen Porter. I can promise you that Bill Matthews had no reason to plant crack cocaine on Glen Porter that wasn't his, that just coincidentally happened to be next to him while he coincidentally happened to have marked money on him, and coincidentally happened to have $300.00 in cash on him sitting next to crack cocaine. Where do you think that cash came from? What do you think he had really been doing that day? How do you think he really got that $300.00? He was selling crack cocaine.

The Defendant did not object to this argument at trial, but now argues that it was improper.

In determining whether statements made during closing argument constitute reversible error, it is necessary to determine whether the statements were improper, and if so, whether the improper statements affected the verdict. State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978); Harrington v. State, 385 S.W.2d 758, 759 (1965). Closing argument is a valuable privilege for all parties, and trial courts give the parties wide latitude in their arguments to the jury. State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998); Sutton, 562 S.W.2d at 823. Appellate courts will not interfere with a trial court's discretion in controlling argument of counsel unless there has been an abuse of that discretion. State v. Pulliam, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996).

While the parties are given wide latitude in their closing arguments, those arguments are not without limitation. They "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." Russell v. State, 532 S.W.2d 268, 271 (Tenn. 1976). A prosecutor may make an argument to the jury when that argument is supported by evidence introduced at trial and may state an ultimate conclusion which would necessarily follow from the testimony of the prosecution witnesses. State v. Brown, 836 S.W.2d 530, 552 (Tenn. 1992) (citing State v. Beasley, 536 S.W.2d 328, 330 (Tenn. 1976)). A prosecutor may also argue that its proof is unrefuted or uncontradicted. See State v. Rice, 638 S.W.2d 424, 427 (Tenn. Crim. App. 1982). A prosecutor may not, however, place his or her own credibility before the jury by stating his or her own opinions of the Defendant or the evidence. See Judge v. State, 539 S.W.2d 340, 345 (Tenn. Crim. App. 1976).

The Defendant complains that the prosecution improperly argued that he had presented no proof in support of his theory of the case and that this was an attempt to shift the burden of proof. The prosecution did address the Defendant's theory of the case by stating, "But let me tell you why this conspiracy theory that they've got, why you can't even consider it as evidence. They've introduced not one ounce of evidence that there's a conspiracy theory against Glen Porter. I mean did you hear any evidence about how officers are conspiring against Glen Porter or are conspiring against drug dealers in this town?" The Defendant objected to this comment at trial, but the trial court overruled the objection. The comment was in response to argument by defense counsel and was a comment on the evidence. The effect of the statement was to argue that the State's case

was uncontradicted by any evidence of a police conspiracy to frame the Defendant. Such an argument was proper, and it was not error to allow it.

The Defendant also complains that the prosecutor improperly argued that the proof clearly showed the marked $100.00 used for the drug buy was found in the Defendant's possession and that the prosecutor improperly inserted his personal opinion into the argument. Though he raises these issues on appeal, he did not contemporaneously object to the argument when it was being made. Since he failed to object during the argument, the issue is waived. State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992); Tenn. R. App. P. 36(a). Even so, the statement that the marked $100.00 was found in the Defendant's possession was a proper argument based on the State's case, and even though the prosecutor improperly inserted his personal opinion into the argument by "promising" the jury that the police had no reason to plant money or drugs on the Defendant, we conclude that those statements did not affect the verdict. The evidence against the Defendant was overwhelming.

Having found all the Defendant's issues to lack merit, the judgment of the trial court is affirmed in all respects. The case is remanded, however, for clarification of whether the judgment of conviction should have been for the sale of more than .5 grams of a controlled substance or the sale of less than .5 grams of a controlled substance.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
GARY R. WADE, JUDGE


_____
JOE G. RILEY, JUDGE