IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2014

**STATE OF TENNESSEE v. JAMES CRAIG THOMAS**

**Appeal from the Criminal Court for Johnson County**
**No. 5890      Jon Kerry Blackwood, Judge**

**No. E2013-02196-CCA-R3-CD - Filed May 15, 2014**

Appellant, James Craig Thomas, was convicted by a Maury County jury of aggravated assault, a Class C felony. The trial court sentenced him to serve twelve years in the Tennessee Department of Correction as a persistent offender. On appeal, appellant argues that the evidence was insufficient to support his conviction, that the assistant district attorney general committed prosecutorial misconduct during his closing argument, and that the trial court's sentencing was inappropriate. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

David L. Robbins, Johnson City, Tennessee, for the appellant, James Craig Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Matthew Edward Roark, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

This case concerns the May 3, 2011 aggravated assault of the victim, Lawrence Ray Beam, by appellant at the victim's home. At appellant's trial, the victim's wife, Kathy Beam, testified that she met appellant through her sister-in-law, Melinda Garland, who is the victim's sister. Appellant and Ms. Garland had been in a relationship in 2008. Ms. Beam explained that at the time, she and the victim had custody of Ms. Garland's three children and

that Ms. Garland had been in arrears on child support payments owed to them in an amount greater than $15,000. In May 2008, the Johnson County Chancery Court issued an attachment against Ms. Garland and set a $1000 cash bond. Ms. Garland was arrested, and appellant paid her bond. Ms. Beam testified that of the $1000, $500 went to the State and $500 went to her and the victim for the support of the children. Ms. Beam said that appellant told the victim that he wanted the $1000 back and accused the victim of stealing it.

The victim testified that after appellant paid Ms. Garland's bond, appellant called the victim and accused him of stealing $1000. The victim said that appellant threatened to cut his throat during that telephone call. The victim had no further contact with appellant until May 3, 2011. On that day, the victim was surveying his property for damage caused by a tornado when he saw a car pull into his driveway and drive all the way to the house. The victim could not see who was driving the car at that point but later saw that appellant was driving. The victim explained that his driveway was one hundred yards long, and there was a garage approximately halfway between his house and the main road. The victim said that he began walking towards his house but that appellant left before he got to it. He observed appellant drive down the main road, turn around, and return to his driveway. In the meantime, the victim walked down to his garage. Appellant parked at the bottom of his driveway, exited the car, and began screaming at the victim. The victim estimated that they were approximately fifty yards apart at that time. Appellant screamed that the victim was a thief and accused him of stealing money and tools. The victim testified that appellant threatened to "whoop [his] a**" and "cut [his] throat." The victim said that he went into his garage and called 9-1-1 on his cellular telephone. While he was on the telephone, appellant "started running up the driveway." The victim said that appellant had a pocket knife and a stick. The victim described the blade of the knife as two to two and a half inches long. He estimated that the stick was two to two and a half feet long and was similar to a "tobacco stick." The victim testified that appellant said that "he was going to kill" him. When asked how appellant's actions made him feel, the victim stated, "[I]t kind of puts the fear of God in you, I mean, it scares you . . . ." The victim explained that he believed appellant was going to kill him. When asked how far away appellant was from him while appellant had the knife and stick, the victim replied that appellant was "fifteen, twenty yards" away and "never . . . [came] closer than ten feet."

The victim further testified that appellant returned to his car and that he "was down there cussing and a hollering and -- and then he come [sic] back." When appellant approached him the second time, the victim could no longer see the knife and stick in his hands. Appellant again threatened to kill him. The victim said that he informed appellant that he had called the police, and appellant responded that if he went to jail, "whenever he got out[,] he'd be back to finish the job." The victim testified that his nephew came over from across the street and tried to get appellant to calm down. Appellant's girlfriend, who

had been in appellant's car, also tried to calm him down.  The victim's nephew was standing between appellant and the victim when appellant reached around the victim's nephew and slapped the victim in the face.  Appellant returned to his car and left.

Angelina Snyder testified that she was a 9-1-1 dispatcher for Johnson County on May 3, 2011.  While she did not specifically remember answering the victim's 9-1-1 call that day, she identified the complaint card that she filled out regarding the call.  She testified that the victim reported that appellant "was on his property threatening, cussing him."  Her notes indicated that she heard appellant "in the background screaming that he was going to kill" the victim.  The victim advised her that appellant had a knife and stick and had "smacked him in the face."

Johnson County Sheriff's Department Investigator John Stout testified that he responded to the victim's address on May 3, 2011.  When he arrived, the victim described appellant's vehicle, so Investigator Stout left the victim's property to look for appellant.  When he could not find appellant, he returned to the victim's property so that the victim could give him more information.  Investigator Stout described the victim as being "shaken up" and "really upset."

Following Investigator Stout's testimony, the State rested its case.  Appellant presented no proof.  The jury found appellant guilty of aggravated assault.

The trial court held a sentencing hearing, at which both appellant and the State presented witnesses.  The State moved into evidence appellant's presentence report.  The report showed that appellant had twenty-seven felony and misdemeanor convictions, not including traffic offenses.  He had his probation revoked at least three times and had absconded from probation once.

Appellant testified that he was forty-four years old at the time of the sentencing hearing.  He said that he had worked as a millwright, building turbines, for many years but had been welding for the previous three years.  He was a member of Cobbs Creek Baptist Church.  Appellant testified that he had been diagnosed with Hepatitis C and was awaiting treatment, which had been delayed due to court proceedings.  Appellant said that he would live with his mother if granted probation.  Appellant said that he had been on probation since he was eighteen years old and had "done well."  According to him, he had paid his fines and had never failed a drug test.

On cross-examination, the State questioned appellant about the number of his convictions and his history of supervision, but appellant had difficulty remembering exact information.

On appellant's behalf, Deana Jenkins testified that she had been dating appellant for the year prior to the sentencing hearing. She said that she had "never seen him do anything wrong." He did not drink alcohol, and he got "along with everybody."

The State called appellant's probation officer, Tim Tapp, to testify. Mr. Tapp said that he had supervised appellant from May 2011 until December 2011. He testified that appellant made some payments and reported, although there were a few times that he missed reporting. Appellant had a good attitude but always blamed his trouble on someone else. Mr. Tapp said that another probation officer who had supervised appellant recorded the number of times that appellant "had been revoked and reinstated." Mr. Tapp said that "[h]e was in and out of jail while he was on probation[,] so he could never seem to get the probation term finished."

The parties agreed that appellant was a Range III, persistent offender. The trial court found that the following enhancement factors applied to appellant's sentencing: appellant had a prior history of criminal convictions beyond that necessary to establish his range, Tenn. Code Ann. § 40-35-114(1); that appellant had previously failed to comply with the conditions of a sentence involving release into the community, *id.* § 40-35-114(8); and that appellant had committed the offense while on probation, *id.* § 40-35-114(13)(C). The trial court sentenced appellant to twelve years. The trial court also found that appellant had an extensive history of criminal activity, *id.* § 40-35-115(b)(2), and ruled that appellant's sentence would run consecutively to the sentence he was serving for a prior conviction. Appellant now appeals from the judgment of the trial court.

## II. Analysis

### A. Sufficiency of the Evidence

Appellant contends that the evidence was insufficient to support his conviction for aggravated assault. He asserts that the victim could not have reasonably been in fear of imminent bodily injury because of the distance between them, citing the "zone of danger" doctrine associated with reckless endangerment. The State responds that the zone of danger doctrine is inapplicable to aggravated assault and that the evidence was sufficient to support appellant's conviction. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354

S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As charged by the indictment in this case, to support appellant's conviction, the State had to show beyond a reasonable doubt that appellant intentionally or knowingly caused the victim to reasonably fear imminent bodily injury and that a deadly weapon was involved. *See* Tenn. Code Ann. § 39-13-101(a)(1)(2); -102(a)(1)(A)(iii). "Imminent danger is an immediate, real threat to one's safety." *State v. Bobby Joe Young, Jr.*, No. M2010-01531-CCA-R3-CD, 2011 WL 6291813, at *7 (Tenn. Crim. App. Dec. 14, 2011), *perm. app. denied* (Tenn. Apr. 20, 2012) (citing *Black's Law Dictionary* (8th ed. 2004)).

Appellant contends that the victim could not have reasonably feared imminent bodily injury because he was not in the zone of danger. However, "this court has declined to apply a zone of danger approach to aggravated assault." *Bobby Joe Young, Jr.*, 2011 WL 6291813, at *7 (citing *State v. James Paris Johnson*, No. E2008-02555-CCA-R3-CD, 2010 WL 3565761, at *6 (Tenn. Crim. App. Sept. 15, 2010)). In *James Paris Johnson*, this court reasoned that the zone of danger doctrine applied to the offense of reckless endangerment did not apply to aggravated assault because with aggravated assault "[t]he point at issue is

not whether the victim was within a certain physical area within which he might be harmed even if he was unaware of the danger, but whether his fear of imminent bodily injury was reasonable." *James Paris Johnson*, 2010 WL 3565761, at *6. Appellant attempted to distinguish the facts in the *James Paris Johnson* case from this case, but his argument is inapposite because the reasoning in *James Paris Johnson* was a matter of interpreting the law, not applying the facts.

Viewed in the light most favorable to the State, the evidence presented at trial showed that appellant drove to the victim's house, approached the victim while holding a knife and a stick, and threatened the victim's life. The victim responded by calling 9-1-1. The victim testified that he was scared and that he believed appellant would follow through on his threat to kill him. The responding law enforcement officer confirmed that the victim was still "shaken up" when the officer arrived. The 9-1-1 dispatcher testified that she heard someone threatening to kill the victim while she was on the line with him. In addition, appellant had threatened the victim in the past.

Appellant clearly had at least one deadly weapon and was acting intentionally, based on his verbal threats. The issue set forth on appeal by appellant is whether the victim reasonably feared imminent bodily injury. Our supreme court has accepted the *Black's Law Dictionary* definition of "imminent," part of which states, "'Something which is threatening to happen at once[.]'" *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999) (quoting *Black's Law Dictionary* (6th ed. 1990)). In addition, "[t]he element of "fear" is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury." *State v. Gregory Whitfield*, No. 02C01-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App. May 8, 1998). Appellant approached the victim while wielding a knife and stick and threatening to kill him, and the victim testified that he believed appellant would follow through on his threat. Under these facts, it was reasonable for the victim to fear that appellant would cause him bodily injury, as he was "'threatening to do at once.'" *Payne*, 7 S.W.3d at 28 (quoting *Black's Law Dictionary* (6th ed. 1990)). We conclude that a jury could have found beyond a reasonable doubt that appellant intentionally or knowingly caused the victim to reasonably fear imminent bodily injury and that a deadly weapon was involved. Therefore, the evidence was sufficient to support appellant's conviction.

## B. Prosecutorial Misconduct

Appellant contends that the State improperly commented on his right not to testify during its closing arguments.[1] The State responds that the State merely commented that the victim's testimony was uncontroverted and as such was not error. We agree with the State.

Both the federal and state constitutions protect a defendant's right to remain silent. *See* U.S. Const. Amend. 5; Tenn. Const. Art. 1, § 9. "It is never proper for a prosecuting attorney to comment upon a defendant's decision not to testify." *State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999) (citing *Griffin v. California*, 380 U.S. 609 (1965)). Such comments constitute reversible error unless this court concludes that the error was harmless beyond a reasonable doubt. *State v. Hale*, 672 S.W.2d 201, 202-03 (Tenn. 1984).

In this case, the record shows that the State, in its closing arguments, stated, "[The victim's] testimony is not controverted. Nobody is arguing with him. Nobody is here saying, ['][W]ell, it didn't happen that way . . . .[']" Appellant objected, and the trial court enjoined the State not to say more than that the victim's testimony was not contradicted. Then, the State moved on to reviewing the evidence presented in the case. "Generally, mere argument by the [S]tate that its proof is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify." *State v. Rice*, 638 S.W.2d 424, 427 (Tenn. Crim. App. 1982) (citing *Taylor v. State*, 582 S.W.2d 98, 100 (Tenn. Crim. App. 1979); *State v. Livingston*, 607 S.W.2d 489 (Tenn. Crim. App. 1980)); *see also Thornton*, 10 S.W.3d at 235. We note that in this case, there were two eyewitnesses to the incident who did not testify at trial. While it would have been better for the State to have stopped its argument at stating that the proof was uncontroverted, due to the fact that witnesses might have testified other than appellant, we cannot construe the State's argument as a comment on appellant's right not to testify. In our view, the State's comments were not improper and did not violate the prohibition against commenting on a defendant's failure to testify. Therefore, appellant is without relief as to this issue.

## C. Sentencing

Appellant's only argument with regard to sentencing is that the trial court "failed to cite any mitigating factors or enhancement factors in the record." The State responds that the trial court found three enhancement factors applicable to appellant's sentencing and did not abuse its sentencing discretion.

---

[1] Appellant also contends that the State falsely stated during the sentencing hearing that appellant was arrested in Chattanooga. However, appellant did not object to the statement. Therefore, he has waived plenary review of this issue. *See* Tenn. R. App. P. 36(a).

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging

the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Appellant is a Range III, persistent offender. As such, he was subject to a sentence of ten to fifteen years. *See* Tenn. Code Ann. § 40-35-112(c)(3). The trial court sentenced him to twelve years after finding three enhancement factors: appellant had a prior history of criminal convictions beyond that necessary to establish his range, Tenn. Code Ann. § 40-35-114(1); appellant had previously failed to comply with the conditions of a sentence involving release into the community, *id.* § 40-35-114(8); and appellant had committed the offense while on probation, *id.* § 40-35-114(13)(C). The record supports the trial court's findings because the presentence report reveals that appellant had twenty-seven various felony and misdemeanor convictions (other than traffic offenses), had his probation revoked three times prior to this case, had absconded from probation once, and was on probation when he committed the instant offense. Thus, the trial court sentenced appellant to a within-range sentence supported by the record. We conclude that the trial court did not abuse its discretion, and appellant is without relief as to this issue.

## CONCLUSION

Based on our review of the record, the applicable law, and the briefs of the parties, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE