STATE of Tennessee, Appellee,

v.

Joseph D. ROBINSON, Appellant.

Court of Criminal Appeals of Tennessee.

April 2, 1981.

Permission to Appeal Denied by Supreme Court June 15, 1981.

Jennifer Helton Small, Asst. Atty. Gen., Nashville, Alan E. Glenn, Asst. Dist. Atty. Gen., Memphis, Peter Strianse, Research Asst., Nashville, for appellee.

Walker Gwinn (On Appeal), Appellate Public Defender, Memphis, Arthur E. Quinn (At Trial), Asst. Public Defender, Memphis, for appellant.

## OPINION

DAUGHTREY, Judge.

Joseph D. Robinson appeals from convictions for robbery and for burglary in the first degree. The jury assessed his punishment at not less than seven nor more than ten years, and not less than ten nor more than fifteen years, respectively. A co-defendant, Calvin Alfred Green, chose not to appeal his convictions.

Robinson raises two issues on appeal. He asserts that the trial court erred by: (1) determining that two juvenile State's witnesses were competent to testify; and (2) refusing, on defense request, to order the production of police reports pursuant to Rule 16(a)(1)(E), Tennessee Rules of Criminal Procedure.

In the early morning hours of August 28, 1979, Michael Gory and his nephews, Dennis, age ten at the time of trial, and Reginald, age nine at the time of trial, were asleep on the floor of his Memphis apartment. The kitchen door burst open and Robinson and Green entered. Robinson demanded money from Michael Gory. Green, following Robinson's instructions, obtained a knife from the kitchen, which Robinson then used to threaten and menace the elder Gory. The intruders ransacked the house, looking for money, and then departed. Gory immediately notified the police.

A short time later, Robinson and Green returned, relieving Gory of his watch and of some three dollars. The police arrived promptly, causing the two men to flee. They were apprehended while attempting to hide in a vacant lot a short distance away.

Robinson challenges the determination of the trial court that Dennis and Reginald Gory were competent to testify as witnesses at trial. Our courts have held that the standard for determining a child's competency to testify is not age but intelligence and a sense of duty to tell the truth. *Ball v. State*, 188 Tenn. 255, 219 S.W.2d 166, 168 (1949); *see also* T.C.A. § 24–101, providing that "[e]very person of sufficient capacity to understand the obligation of an oath is competent to be a witness." The question of a child's competency to testify is largely a matter of discretion with the trial judge, and in the absence of clear abuse, exercise of that discretion will not be overturned. *Bright v. State*, 191 Tenn. 249, 323 S.W.2d 53, 56 (1950).

The record in this case fully supports the trial court's determination of competency. During a jury-out hearing both of the

young boys related that they knew the difference between right and wrong and understood that taking the oath meant that they had to tell the truth. Both witnesses promised that they would tell the truth when testifying. This first issue must be overruled.

In his other issue, Robinson contends that police arrest reports, compiled and filed by the investigating officers, were subject to inspection by defense counsel on request at the conclusion of the officers' direct testimony, pursuant to Rule 16(a)(1)(E), Tennessee Rules of Criminal Procedure. The State argues that these "police reports" were not subject to production under Rule 16.

Since the promulgation of Tennessee Rule of Criminal Procedure 16, governing discovery and inspection in criminal cases, several apparently widespread misconceptions concerning the discoverability and producibility of police reports have arisen. The one involved here is perhaps the most serious: the erroneous assumption that police reports are *per se* non-discoverable under Rule 16. This interpretation of the rule is simply not legally correct.

In tracing the source of the confusion, which unfortunately has not been dispelled by recent opinions of this Court,* it is useful to begin with the provision in Rule 16(a)(2), regarding "information not subject to disclosure":

> Except as provided in paragraphs (A), (B), (D), and (E) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal State documents made by the district attorney general or other State agents or law enforcement officers in connection with the investigation or prosecution of the case, or of statements made by State witnesses or prospective State witnesses.

■ Paragraph (A) of Rule 16(a)(1) involves statements of a defendant in the possession of the State; paragraph (B) relates to a defendant's prior record, also commonly in the hands of the State; and paragraph (D) concerns reports of examinations and tests run by or in the possession of the State. Thus, to the extent that a police report contains the defendant's pretrial statement, his prior criminal record, or the results of tests related to the investigation in question, that police report is *discoverable prior to trial* by the defendant for purposes of preparing his defense.

■ On the other hand, paragraph (E) (the "Tennessee Jencks Act") does *not* apply to *pretrial discovery*. Instead, it involves the right of defense counsel *during trial* to inspect prior statements of prosecution witnesses following their testimony on direct examination, for purposes of impeachment:

> After a witness called by either the state or the defendant in a criminal case has testified on direct examination, the court shall, on motion, order the state or the

---

* *See, e. g., Jones v. State,* 601 S.W.2d 323 (Tenn. Crim.App.1980), in which defense counsel asked to inspect police officers' investigative reports at the conclusion of the officers' direct testimony. According to the opinion in *Jones,* "Defendant's brief indicates counsel wished to examine the report for the purpose of impeaching the testimony of the victims," rather than to impeach the testimony of the officers who made the reports. The *Jones* opinion holds that "[s]uch reports are not the subject of disclosure under No. 16 of the Rules of Criminal Procedure applying themselves [sic] to discovery and inspection." *Id.* at 325–26. As pointed out in the text of the instant opinion, this conclusion, if it applies to *all* police reports, is erroneous because it is too broad.

*See also State of Tennessee v. Robert Lee Prince,* Court of Criminal Appeals at Jackson, November 20, 1980, in which the defendant sought to inspect a police officer's report after the officer testified concerning her investigation of the robbery in question. Instead of ruling that the Rule 16(a)(1)(E) question could not be addressed because the report was not included in the record, this Court ruled that the report was exempt from inspection under Rule 16(a)(2) because it was "merely routine." *Id.* at p. 3. Under the language of Rule 16(a)(2), however, no such basis for exemption exists if the report otherwise qualifies under Rule 16(a)(1)(E).

defense to produce any statement of the witness in the state's or the defense's possession which relates to the subject matter as to which the witness has testified. Upon request by the state or the defense made upon calling a witness and in advance of direct testimony, the court shall first inspect such statement in camera to determine if it contains matter relating to the subject matter of the testimony. The court shall excise such portions which do not relate to the subject matter of the testimony; however, in the event of conviction and appeal, on motion by either party, the entire statement shall be made available to the reviewing courts. If the party calling a witness elects not to comply with this paragraph, the court shall have the witness withdraw and shall not allow any direct testimony. Rule 16(a)(1)(E).

◼ In construing subsection (a)(2) together with subsection (a)(1)(E), it becomes apparent that the content of a police report may constitute "Jencks Act material" and is therefore not immune from inspection, *if* the report qualifies as the prior "statement" of a testifying witness as that term is defined by Rule 16(a)(1)(F):

> The term "statement" as used in paragraph (E) means:
>
> (i) a written statement made by said witness and signed or otherwise adopted or approved by him; or
>
> (ii) a stenographic, mechanical, electrical, or other recording of a statement, or a transcription or summary thereof, which is an essentially verbatim recital of an oral statement made by said witness.

◼ The police report introduced as Exhibit # 5 in this case is a two-page arrest report, handwritten and signed by the reporting officer, R. E. McNeil. In it he details the steps he took in the investigation of the offense for which the defendant was on trial. When Officer McNeil testified at length on direct examination concerning his investigation, the report unquestionably became subject to "Jencks Act" inspection, because it "contains matter relating to the subject matter of [Officer McNeil's] testimony." Given the defendant's timely request to inspect the report, it clearly fell within the provisions of paragraph (E).

But is Officer McNeil's report a "statement" under paragraph (F)? Just as clearly it is, because it is Officer McNeil's "written statement *made by said witness* and *signed* or otherwise adopted or approved *by him*." Rule 16(A)(1)(F)(i), *supra*. (As previously pointed out, the mere fact that the "statement" in this case was in the form of a police report does not alter its status as a Rule 16(a)(1)(F) "statement," because of the provisions of Rule 16(a)(2).) Thus the defendant was entitled to inspect those parts of Officer McNeil's report which related to his direct testimony, and if the report contained extraneous matters, they should have been excised by the trial court, as provided in paragraph (E).

◼ If the rules are this clear, why has the misconception arisen that police reports are immune from defense inspection? It appears that the bench and bar have confused not only the distinction between pretrial discovery and inspection at trial, but also have failed to distinguish between two separate situations in which inspection of police reports becomes pertinent at trial. The first involves application of Rule 16(a)(1)(E) and (F) to the inspection of a report containing information about an investigation, when the reporting officer is testifying to the facts of the investigation. The second situation involves the right to inspect a police report containing information about a police interview, for purposes of impeaching not the testimony of the reporting officer but that of the interviewee. The former case is the one now before us, and as the above analysis shows, it clearly involves "Jencks Act material." In the *latter* case, however, the police officer's summary of the witness's pretrial statement would be subject to inspection under paragraph (E) following the interviewee's

direct testimony *only if* it qualified as a "statement" by the interviewee-witness under paragraph (F).  To come under that provision, a third party statement contained in a police report would have to be in writing and be "signed or otherwise adopted or approved" by the interviewee under Rule 16(a)(1)(F)(i), *supra,* or it would have to consist of "a stenographic, mechanical, electrical, or other recording" or "a transcription or summary thereof, which is an essentially verbatim recital of an oral statement made by" the interviewee, pursuant to Rule 16(a)(1)(F)(ii), *supra.*

■ From the defendant's point of view, the usual obstacle in securing inspection of a police report to impeach a third party witness is the method used to compile the report.  Frequently the interviewing officer will include in his report a general summary of the interviewee's oral statement, often reconstructed from memory at some point after the interview occurred.  Such a summary does not meet the requirements of paragraph (F)(ii) governing oral statements and will not qualify under paragraph (F)(i) unless after being reduced to writing it has been "signed, adopted, or approved" by the person interviewed.  Thus, a police report frequently will not qualify as the "statement" of a non-police witness whose interview or other pretrial statement is summarized in the report, and it is said to be non-producible (or, less accurately, "non-discoverable") for purposes of impeaching the interviewee.  It appears that the general non-producibility of third party statements has led to the erroneous conclusion that *all* police reports are exempt from discovery and inspection under Rule 16(a)(2), despite the exceptions clearly delineated in that subsection.

The analysis set out above conforms with existing interpretation of the federal Jencks Act, 18 U.S.C. § 3500, upon which Rule 16(a)(1)(E) and (F) were modeled.  Thus, in interpreting what constitutes a "statement" by a witness interrogated by federal agents, the United States Supreme Court has noted that:

It is clear that Congress was concerned that only those statements [contained in agents' reports] which could properly be called the witness' own words should be made available to the defense for purposes of impeachment.  It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent . . . [S]ummaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be produced [for purposes of impeaching the interviewee].  Neither, of course, are statements which contain the agent's interpretations or impressions [of the interview].  [Footnote omitted.]

*Palermo v. United States,* 360 U.S. 343, 352–53, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959).

The *Palermo* case involved use of a federal agent's report to impeach a government witness interviewed by the agent prior to trial.  Two years after *Palermo,* the Supreme Court addressed the question of whether an agent's report was a "statement" producible for purposes of impeaching the agent himself, following his testimony on direct examination.  At trial, the United States Attorney had resisted production of the agent's report, on the ground that it contained a summary of an interview which was not a "statement" under the Act because it was non-verbatim and had not been signed or adopted by the interviewee.  The trial court agreed and ruled the agent's report non-producible.  By the time the case reached the Supreme Court, government attorneys had apparently straightened out their previous confusion between "statements" used to impeach interviewees and those used to impeach inter-*viewers*:

The Government now concedes that this was an erroneous ruling, as indeed it was. Each of these statements [the agent's re-

ports] related "to the subject matter as to which the witness [agent] has testified." Each was a "statement" as that word is defined in the Act . . . and should have been produced. [Footnotes omitted.]

*Clancy v. United States*, 365 U.S. 312, 314–15, 81 S.Ct. 645, 647, 5 L.Ed.2d 574 (1961).

Other United States Supreme Court cases have explicitly rejected a "work product" exception to the Jencks Act for investigative reports. *See, e. g., Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976) (notes made by an Assistant United States Attorney are producible once he takes the stand, if they otherwise qualify as a "statement"), and *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (notes made by a defense investigator are producible once he testifies as to the results of his investigation).

■■■■ Although the application of Rule 16 to police reports has apparently caused confusion in Tennessee courts, after *Palermo* and *Clancy* the federal courts seem to have experienced little difficulty with the question. This may be because the federal Jencks Act, 18 U.S.C. § 3500, governing *inspection* of prior statements at trial for purposes of impeachment, is codified entirely separately and apart from Federal Rule of Criminal Procedure 16, governing *discovery* before trial for purposes of preparing a defense. If the "Tennessee Jencks Act" were separate from the discovery provisions of Rule 16, rather than appearing as Rule 16(a)(1)(E) and (F), perhaps the confusion in our caselaw could also have been avoided. Instead of looking to the *form* of the document requested under Rule 16(a)(1)(E), and ruling it non-producible merely because it is a report, the trial court's first inquiry ought to be: *whose* testimony is sought to be impeached by the document? If it is a lay witness previously interviewed by a law enforcement officer, then the officer's report of the interview can only be inspected and used to impeach if it constitutes a "statement" of the inter-

viewee, as defined by paragraph (F). If, on the other hand, it is the reporting officer who is testifying, a report filed by him, one that he has signed or otherwise approved, is subject to inspection to the extent that it "relates to the subject matter as to which the [officer] has testified." Rule 16(a)(1)(E).

■■■■ Simply put, an officer's own investigation report constitutes a prior "statement" by that officer, unless for some reason it fails to qualify under paragraph (F). For example, Exhibit # 6 in the record before us is not the report of an individual police officer but a computer print-out that appears to be a summary of the reports of several different officers, made by an unknown compiler. It bears no one's signature, nor does it carry any other indicia of a paragraph (F) "statement." Certainly it could not be used to impeach Officer McNeil, for it "could [not] properly be called the witness' own words" and, indeed, appears to be only the compiler's "interpretation or impression" of the various reports. *Palermo v. United States, supra*, 360 U.S. at 353, 79 S.Ct. at 1225. It is thus clear that Exhibit # 6, the computer print-out, does not constitute a "statement" by Officer McNeil and was not subject to inspection under Rule 16(a)(1)(E).

■■■■ Having determined, however, that Exhibit # 5 should have been produced for inspection under paragraph (E), the remaining question is whether the trial court's failure to order production resulted in reversible error. The report, which Officer McNeil in his testimony referred to as an "arrest ticket," contains a summary of the officer's activities from the time he responded to a "prowler on the inside call," through the apprehension and arrest of two suspects and the officer's interviews with the victim and with those arrested. A comparison of the content of Officer McNeil's direct testimony with that of his report reveals virtually no inconsistency between the two. It thus appears that inspection of

the report would have afforded the defense little or no meaningful opportunity to impeach, and the error in withholding the report was therefore not prejudicial. Certainly it cannot be said that the error affected the outcome of the trial. Tennessee Rule of Criminal Procedure 52(a).

Finally, it seems appropriate to point out that contrary to the prosecutor's argument at trial, a correct interpretation of the "Tennessee Jencks Act" does *not* mean that "the defense is entitled to start poring through [the prosecution's] entire file." This statement evinces dramatically the common confusion between the "Jencks Act" provisions of Rule 16(a)(1)(E) and (F), and the pretrial discovery measures contained in the remaining provisions of Rule 16. The Assistant District Attorney was correct when he maintained that as a "police memorandum, [Officer McNeil's report] is not discoverable pursuant to Rule 16," if by that statement he meant that the report is not subject to pretrial discovery. Clearly, however, it was subject to inspection following the officer's testimony on direct examination. Because the report turned out

to have no impeachment value, however, the resulting error in denying inspection was, at most, harmless.

The trial judge is to be commended for sealing the police reports and including them in the record for appellate review. Had the reports not been proffered as exhibits to the record, we would be wholly unable to address the Rule 16(a)(1)(E) question raised below.

Finding no reversible error in the record, we affirm the judgment of the trial court.

DWYER and BYERS, JJ., concur.