# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY SESSION, 1997

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9511-CR-00343** |
| | ) | |
| Appellee, | ) | |
| | ) | **SHELBY COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. ARTHUR T. BENNETT,** |
| **TERRENCE L. DAVIS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(FIRST DEGREE MURDER)** |

FOR THE APPELLANT:

**LESLIE I. BALLIN**
Attorney at Law

**MARK A. MESLER**
Attorney at Law
Ballin, Ballin & Fishman, P.C.
200 Jefferson Avenue
Suite 1250
Memphis, TN  38103

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**WILLIAM DAVID BRIDGERS**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

**JOHN W. PIEROTTI**
District Attorney General

**THOMAS D. HENDERSON**
Assistant District Attorney General

**JENNIFER NICHOLS**
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN  38103-1947

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# **OPINION**

The Defendant, Terrence Davis, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a jury of first degree murder in the Shelby County Criminal Court, and sentenced to life imprisonment. In addition to challenging the sufficiency of the evidence, Defendant argues that the trial court committed reversible error by: (1) refusing to suppress the statement given by Defendant on November 8, 1993; (2) refusing to permit Defendant to introduce into evidence a letter written by the victim's mother; (3) allowing certain photographs of the victim to be admitted into evidence; (4) allowing opinion testimony of a non-expert witness regarding discipline to be admitted into evidence; (5) requiring Defendant to provide to the State an investigative report prepared by a defense witness; and (6) administering the oath to the grand jury foreperson in the jury's presence during the trial. We affirm the judgment of the trial court.

## I.   SUFFICIENCY OF THE EVIDENCE

Whenever the sufficiency of the evidence at trial is questioned, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 433 U.S. 307, 319 (1979). This court may not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled

to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835.

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

At the time of the victim's death, the Defendant was living with the victim, Santana Goodwin, the victim's mother, Valerie Goodwin, and a two-month old child, Terence Davis, Jr. While Terence Davis, Jr. was the child of the Defendant and Ms. Goodwin, the Defendant was not the biological father of the victim. During the State's proof, the evidence presented was that on November 6, 1993, an ambulance was dispatched to Defendant's home. The emergency medical technician who arrived on the scene, Janet Kuhn, testified as to the victim's condition upon her arrival at 4190 Raleigh Woods, Apartment 3. When Kuhn first arrived, the Defendant was holding the victim in his arms and told Kuhn that the victim fell and hit her head on the fireplace. The victim was cool to the touch and had no vital signs. After attempting to resuscitate the victim using various

methods of CPR, intubation, and medication and receiving no response from the victim, Kuhn transported the victim to LeBonheur Hospital. On the way to the hospital, she noted that the victim's abdomen was very tight and swollen, and that she was covered in bruises with a hematoma on her forehead and a busted lower lip.

After the victim arrived at LeBonheur Hospital, she was treated by a pediatric emergency room physician, Mary McGinty. The victim was cold upon arrival, with no pulse or blood pressure and a distended abdomen. She was observed to be a twenty-two month old female. While the victim's heart was still giving electrical impulses, there was no response to the various resuscitation techniques administered to her. Dr. McGinty testified that the victim was, for all practical purposes, dead when she arrived at the hospital. The victim was found to have marks on her face, neck and abdomen, as well as bruises, broken blood vessels and a cut on her lower lip. The victim's stools contained both old and new blood, and the tube used in an attempt to resuscitate the victim contained blood from the victim's abdomen. While Dr. McGinty did not list a cause of death, she was suspicious of abuse immediately and recommended an autopsy be performed.

James Madden, a crime scene investigation officer of the Memphis Police Department, was called to LeBonheur Hospital to investigate the victim's death and to take photographs of her body. Later, Madden went to the victim's home to investigate and take photographs. While at the home, he took photos of a paper towel in the kitchen trash can with what appeared to be blood spots, a sheet with what appeared to be blood spots, the bathroom with the victim's

-4-

house shoes lying in the floor, lumps of hair lying on the living room floor, and the fireplace where the Defendant said the victim fell and hit her head. Madden then collected some of the items he photographed, including the paper towel, shoes, sheet and lumps of hair. During cross-examination, Madden admitted that he observed fresh bruises on the victim's lips, bruises on her left jaw, marks on her forehead, discolored spots on her neck and bruises on her side when he photographed her at the hospital. He did not observe any blood on the fireplace when he was investigating the scene.

Valerie Goodwin, the victim's mother, testified that the Defendant was not working during the week of November 1st through November 8th and cared for the victim whenever she was working at Cracker Barrel during the evening hours. Just prior to November 6, 1993, Goodwin observed a dark circle of bruises on the victim's jaw. When she asked the Defendant what happened to the victim, the Defendant told her that the victim fell outside while playing.

On the evening of November 6, 1993, Goodwin was called in to work at the Cracker Barrel. While working, she called the Defendant who told her that the victim was sleeping. Later, the Defendant called and told her that the victim fell, was not breathing and an ambulance was on its way to the apartment. After getting a ride from one of her neighbors, Goodwin arrived at the apartment in time to follow the ambulance to LeBonheur Hospital. While in the waiting room, the Defendant told her that the victim fell after tripping on house shoes and hit her head on the fireplace. Goodwin further testified that both she and the Defendant sometimes spanked the victim on either her hands, legs, or bottom. On cross-examination, she admitted that she never witnessed the Defendant abuse the

victim and told others that she could not believe the Defendant would have done something like this.

The Defendant was interviewed for the first time on November 7, 1993 by Ronald Wilkinson, assigned to the Homicide Bureau at the Memphis Police Department. Wilkinson testified that Defendant told him that the victim tripped and fell on the fireplace. The victim stopped breathing, so the Defendant began administering CPR.

Richard Roleson, also an officer of the Homicide Bureau, testified that he interviewed the Defendant for the second time on November 8, 1993, and they went over the events of November 6, 1993 several times. During this discussion, the Defendant changed his story several times, but ultimately admitted that on November 3, 1993, he whipped the victim after she had broken a glass. When the victim slid out of the Defendant's grasp, he hit her until she got still and grabbed her by the back of the neck. The Defendant said the victim fell, and he kicked her in her left side. In his statement, the Defendant admitted to getting out of control. The Defendant again spanked the victim on November 6, 1993, the day of the victim's death. On cross-examination, Roleson admitted that he told Defendant that no one had been electrocuted in Tennessee since 1962 or 1963, but that the State might crank it up again any day.

The autopsy of the victim was performed by a pediatric forensic pathologist, Violette Hnilica. She testified that there were various abrasions and contusions on the victim's twenty-five (25) pound body, as well as a tongue hemorrhage. The fleshy tissue between the lip and the gum was torn. Certain

injuries she observed were not consistent with a fall, but were consistent with being hit at skin surface from some other angle. The victim's lower abdominal region had multiple contusions, with nineteen (19) separate contusions on the trunk area of the victim's body. The contusions in the lower left chest region were of a consistent pattern. In her internal exam, Dr. Hnilica testified that there was old blood in the abdomen, brownish and disintegrating. This was unusual as there is no free blood in a healthy abdomen. The old blood in the abdomen was indicative that the victim sustained the injuries approximately three (3) days prior to her death. All the victim's left organs had contusions. She had five broken ribs. These injuries were of a pattern consistent with the inside part of the heel of a shoe. Dr. Hnilica found over fifty (50) impact sites on the child. The liver was completely lacerated from the abdomen, which was consistent with compressive frontal pressure to the body. While the liver laceration would normally be fatal in and of itself, in Dr. Hnilica's opinion, the victim died of multiple blunt force injuries.

The defense offered various witnesses who testified as to seeing Valerie Goodwin spank the victim and grab other friends' children on prior occasions. Some defense witnesses testified that the Defendant was not at home on the day of November 3, 1993, alone with the victim, but that the Valerie Goodwin was there with the victim on that date. The Defendant did not testify at trial.

According to Tennessee Code Annotated section 39-15-402, a person is guilty of aggravated child abuse when such abuse results in serious bodily injury to the child. The offense of child abuse is defined as " . . . any person who knowingly, other than by accidental means, treats a child under eighteen (18)

years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare . . ." Tenn. Code Ann. § 39-15-401(a). Under Tennessee Code Annotated section 39-13-202(a)(2), first degree murder is the killing of another in the perpetration of or the attempt to perpetrate aggravated child abuse.

By his own statement, Defendant admitted committing such acts of abuse which ultimately resulted in the death of the victim. Furthermore, the testimony of Dr. Hnilica, the coroner who performed the autopsy of the victim, confirms that the victim died of multiple blunt trauma injuries, consistent with the Defendant's statement that he kicked the victim and the pattern of injury consistent with a shoe on the victim's left side. Therefore, there is sufficient evidence in the record for a rational trier of fact to find the Defendant committed first degree murder in the perpetration of aggravated child abuse resulting in the death of the victim. The Defendant has not met his burden of proof regarding the insufficiency of the evidence. This issue is without merit.

## II. ADMISSION OF DEFENDANT'S STATEMENT

The next issue the Defendant raises is that the trial court erred by refusing to suppress his statement of November 8, 1993, in which he admitted that he "got out of control" and kicked the victim in her left side on November 3, 1993. The trial judge found at the suppression hearing that the statement was voluntary and not due to any coercion.

The party which prevails in the trial court is entitled to the strongest legitimate view of the evidence as well as all reasonable inferences drawn from that evidence adduced at the suppression hearing. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The trial court's findings will be upheld unless the evidence preponderates otherwise. Id.

It is the defendant's duty to have prepared an adequate record in order to allow a meaningful review on appeal. Tenn. R. App. P. 24(b); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). While the Defendant failed to include the entire record of the suppression hearing as part of the record on appeal, an ample account of the proceedings were included with the Defendant's appeal for this Court to make a fair and meaningful evaluation of such proceedings. Tenn. R. App. P. 24(b); see State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993).

In determining whether a statement is made voluntarily, this court must look to the totality of the circumstances surrounding the confession, and the standard is whether "the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined." State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980). In the case sub judice, the Defendant was told after being read his Miranda rights by Roleson, the police officer interrogating him, that the possible penalties for first degree murder were either death or life imprisonment. The police officer further informed Defendant that the death penalty had not been carried out in Tennessee since 1962 or 1963, but that it might start being carried out at any time.

The Defendant refers to an earlier case which was cited in Kelly in which the defendant was promised by a police officer that if he were to confess, the prosecution would not ask for the "electric chair." See Ford v. State, 201 S.W.2d 539 (Tenn. 1947). The statement the officer made to Defendant is distinguishable in that such a statement regarding the possible penalties could not be interpreted as a promise of leniency in exchange for the Defendant's confession. In fact, the officer made no assurances regarding the probable punishment for the Defendant if he were to be convicted. The totality of the circumstances surrounding the Defendant's confession were not such that would overbear the Defendant's will. Great deference is given to a trial judge's determination that a confession was given voluntarily and without coercion because the trial judge sees and hears the witnesses while appellate courts examine only a "cold record." Lowe v. State, 584 S.W.2d 239, 241 (Tenn. Crim. App. 1979). The trial judge found that the Defendant's confession was not coerced, and that the statement the officer told to Defendant regarding the possible punishment did not make Defendant incriminate himself in his statement. A careful review of the record in this case fails to convince us that the evidence preponderates against the findings of the trial judge.

### III.   LETTER WRITTEN BY VICTIM'S MOTHER

The Defendant argues that the trial court erred by refusing to allow a letter written by the victim's mother to be admitted into evidence.  It is well established that the decision to admit or exclude evidence is left to the sound discretion of the trial judge and the trial court's decision will not be disturbed unless it has been arbitrarily exercised.  State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989); State v. Hawk, 688 S.W.2d 467, 472 (Tenn. Crim. App. 1985).

The letter which Defendant sought to have admitted into evidence read:

To Whom it May Concern:

I am writing this letter asking for leniency in the matter of Mr. Terrence LeRoy Davis.  I am the mother of the deceased.  I feel this whole case is being blown out of proportion.  I don't feel it is a murder case.  I feel that what happened if anything was accidental. I would greatly appreciate this if the Court took this into consideration.

                                        Thanks,
                                        /s/ Ms. Valerie Goodwin

The letter from Valerie Goodwin deals with two subjects, leniency and guilt or innocence, respectively.  Any language in the letter regarding leniency is irrelevant as to guilt or innocence and instead is relevant to punishment. Therefore, the contents of the letter regarding leniency are irrelevant and were correctly excluded from trial.

During the trial, Defendant called Valerie Goodwin to the stand as his own witness, but no evidence was introduced to show that she had personal knowledge of the matters surrounding the victim's death on the night of

November 6, 1993. The witness's opinions about whether the victim's death was an accident are irrelevant. Furthermore, Goodwin was allowed to testify regarding her opinion that "[she] could not believe [Defendant] could do something like that," and "if anything had happened [to the victim], it was an accident." Defendant argues that the letter the trial court ruled inadmissible was necessary for his theory of defense. The letter would only be cumulative to her statements already introduced into evidence by the Defendant. These statements were heard by the jury and the trial judge, thereby allowing the Defendant to provide evidence in the record of his theory of defense. This issue has no merit.

## IV.   ADMISSION OF PHOTOGRAPHS OF THE VICTIM

Defendant argues that the trial court erred by permitting the State to introduce into evidence certain photographs of the victim, including one photo of the victim when she was alive and several autopsy photographs. The admissibility of photographs is in the sound discretion of the trial court, and, absent a showing of clear abuse, this Court is not to interfere with the trial court's exercise of that discretion. See State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993). A photo must be relevant to an issue that the jury must decide and the probative value of the photograph must outweigh any prejudicial effect that it may have upon the trier of fact before a photograph may be admitted into evidence. State v. Aucoin, 756 S.W.2d 705, 710 (Tenn. Crim. App. 1988), cert. denied, 489 U.S. 1084 (1989); State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993).

## A. IDENTIFICATION PHOTOGRAPH OF VICTIM

Defendant contends that the photograph of the victim, used by the State for identification purposes and admitted into evidence, constitutes reversible error by the trial court as any of the other photographs used by the State could have been used for identification purposes. Defendant argues that such a picture of the young victim was unduly prejudicial as it motivated the jury to seek vindication for the victim's death. Upon review by this court, the final judgment of conviction should not be set aside unless the error more probably than not affected the judgment or resulted in prejudice to the judicial process. Tenn. R. App. P. 36(b).

While it would have been better if the "before" picture of the victim had been excluded from evidence, it added little or nothing to the sum total of knowledge of the jury. See State v. Dicks, 615 S.W.2d 126, 128 (Tenn.), cert. denied, 454 U.S. 933 (1981); see also State v. Strouth, 620 S.W.2d 467, 472 (Tenn. 1981); State v. Richardson, 697 S.W.2d 594, 597 (Tenn. Crim. App. 1985). The photograph in question is nothing more than a snapshot of the victim. Defendant has failed to provide a basis for finding that this photograph would generate sympathy or prejudice him. After a review of the entire record, and in consideration of the profuse evidence of the Defendant's guilt, the introduction of this photograph of the victim was not prejudicial error. See, e.g., State v. Horton, Lexis 105, Shelby County (Tenn. Crim. App., Jackson, filed Feb. 10, 1988) (perm. to appeal denied); State v. Beckham, C.C.A. 02C01-9406-CR-00107, Shelby County (Tenn. Crim. App., Jackson, September 27, 1995).

## B. AUTOPSY PHOTOGRAPHS

The Defendant next argues that the trial court erred by admitting three different autopsy photographs of the victim into evidence which he claims are overly prejudicial. The State sought to introduce into evidence four autopsy photographs. While three of the photographs were admitted into evidence, one photograph showing an incision from the victim's mid- chest to the navel and the old, brown blood inside the victim's body was ruled inadmissible by the trial judge. This photograph was determined as more prejudicial than probative by the trial judge. Photographs of a corpse are admissible in murder prosecutions, if they are relevant to issues on trial, notwithstanding their gruesome and horrifying character. State v. Banks, 564 S.W.2d 947 (Tenn. 1978). If they are not relevant to prove some part of the prosecution's case, they may not be admitted solely to inflame the jury and prejudice them against the defendant. Id. For the court to determine whether the prejudicial effect of the photographs outweighs their probative value, the matters to be considered include the value of the photographs as evidence, that is, their accuracy and clarity, whether they were taken prior to the corpse being moved . . . the inadequacy of testimonial evidence relating facts to the jury and the need for evidence to establish a prima facie case of guilt or to rebut defendant's contentions. Id. at 948.

The first picture is a photograph of an incision cut into a bruise on the victim's buttocks. While the photograph is quite vivid in its details of a gruesome crime, it is not rendered inadmissible merely because the subject portrayed could be described in words or the photograph may be cumulative. Collins v. State, 506 S.W.2d 179, 185 (Tenn. Crim. App. 1973). The State used this particular photograph for the expert witness to illustrate to the jury that the bruise on the victim's buttocks was deep, indicating a more extensive injury, and that it was an

-14-

older bruise due to the depth of the blood as shown in the incision. Expert testimony of the State placed the fatal injuries occurring from two to five days prior to the victim's date of death, and the illustration of the age and severity of the bruises is consistent with the State's theory of aggravated child abuse by the Defendant. While such a photograph may be visually disturbing, the photograph was not so prejudicial as to outweigh its probative value in determining the age and severity of the bruise.

The two other photographs the Defendant argues were erroneously admitted into evidence are pictures of the victim's liver. The trial court found that such photos were not so disturbing as to be unduly prejudicial, and the photos of the liver were probative in the proof of the elements of aggravated child abuse. The State's expert witness used these photographs to demonstrate the severity of the victim's injuries, and to illustrate that the tear which occurred two to five days prior to the victim's death was consistent with the Defendant's statement about beating and kicking the victim on November 3, 1993. The admission into evidence of these photographs by the trial court was not an abuse of discretion, and this issue is without merit.

V. ADMISSION OF LAY OPINION TESTIMONY

The Defendant contends that the trial court erred by permitting a cousin of the victim to testify as to her opinion of the Defendant's discipline of the victim. If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear

understanding of the witness's testimony or the determination of a fact in issue. Tenn. R. Evid. 701. If the testimony of the witness describes his or her observations in the form of an opinion because it is the only way in which they can be clearly described, then there is an exception to this general rule. National Life & Accident v. Follett, 168 Tenn. 647, 80 S.W.2d 271, 274 (Tenn. 1935) (testimony that a footprint in the snow looked like someone had slipped); State v. Brown, 836 S.W.2d 530, 550 (Tenn. 1992) (nurse's testimony that an injury on the victim's foot looked like a cigarette burn); State v. Mabon, 648 S.W.2d 271, 274 (Tenn. Crim. App. 1982) (testimony that a substance appeared to be blood).

At trial, the victim's cousin testified that while she lived with the victim she witnessed several incidents where the Defendant disciplined the victim. She ultimately told other family members that such discipline by the Defendant was too strict. This testimony fits within the parameters of the exception to the general rule; her opinion of the Defendant's discipline of the victim was the only way for her to clearly describe her observances. This Court cannot find this as reversible error, particularly in light of this cousin's earlier testimony in which she described the Defendant's repeated discipline of the victim for every little thing she did. There was no abuse of discretion by the trial judge in allowing such testimony.

## VI.    ADMISSION OF JENCKS ACT MATERIAL OF DEFENSE INVESTIGATOR

Defendant argues that the trial court erred by requiring the Defendant to provide a copy of his private investigator's reports to the State as "Jencks Act"

materials. After a witness has testified, the party who offered the witness, on motion of the other party, must provide the moving party with any witness's statement the offering party has in their possession that relates to the testimony of the witness. Tenn. R. Crim. P. 26.2(a). A statement includes:

> (1) a written statement made by the witness that is signed or otherwise adopted or approved by the witness; or
>
> (2)a substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof.

Tenn. R. Crim. P. 26.2(g).

While this Court concludes that requiring the Defendant to provide these reports to the State was error, such error was harmless in that there was no prejudice to the Defendant.

The statements at issue were notes a private investigator took as she interviewed witnesses for the Defendant. These notes were later transcribed as a record of her interviews of these witnesses. There is no evidence in the record that the statement was adopted or approved by the witness. Rule 26.2 was formerly a part of Rule 16. In an earlier case under Rule 16, this Court held that a summary of a witness's pre-trial statement would only be subject to inspection under the "Jencks Act" if it was in writing and was signed, adopted or approved by the witness. See State v. Robinson, 618 S.W.2d 754, 759 (Tenn. Crim. App. 1981). The notes the investigator made while interviewing the witness do not qualify under the definition of a "substantially verbatim recital" of a witness's oral statement under Tennessee Rules of Criminal Procedure 26.2(g). See State v. Payton, 782 S.W.2d 490, 494-95 (Tenn. Crim. App. 1989); see State v. Farmer, No. 88-282-III, Davidson County (Tenn. Crim. App., Nashville, filed November 17,

1989) (Rule 11 application denied, January 29, 1990). While the private investigator's report should not have been subject to the "Jencks Act," any such error by the trial court was harmless. Defendant's attorney stated to the trial court that the report was not detrimental to the Defendant. Therefore, Defendant did not suffer any prejudice in turning over the report to the State.

VII.   ADMINISTRATION OF OATH TO GRAND JURY FOREPERSON

The final issue Defendant raises is that the trial court erred by swearing in a grand jury foreperson in view of the jury. The Tennessee Rules of Criminal Procedure provide for an oath to be administered to all members of the grand jury, including the foreperson. Tenn. R. Crim. P. 6(a)(4). A separate subsection of Rule 6 provides that every member of the grand jury shall keep secret the proceedings of that body. Tenn. R. Crim. P. 6(k)(1). Defendant argues that the swearing in of the foreperson of the grand jury by the trial judge in the presence of the Defendant's jury was prejudical and in violation of the rule of secrecy in proceedings.

The purpose of secrecy for grand jury proceedings is to

> imbue the grand jurors with a sense of confidence and security so that they may discharge their duties without apprehension of any hurt from an accused or some other person; to secure the utmost freedom of disclosure of alleged crimes by prosecutors; to conceal the fact that an indictment has been found against an accused who is not yet in custody; to prevent perjury and subornation of perjury to the extent that, if testimony given before the grand jury were known, the accused or a confederate might attempt to disprove it by procuring false testimony; and to protect an accused citizen from public disgrace in a case where there is not enough evidence to support a criminal charge.

<u>Rippy v. State</u>, 550 S.W.2d 636, 642 (Tenn. 1977), *(quoting* 1 Wharton, Criminal Procedure (Torcia 12th Ed. 1974), § 221 at 488, 489).

Obviously, the swearing in of the grand jury foreperson is not within the purpose of the rule for secrecy. Therefore, there was no error by the trial judge when he administered the oath to the foreperson of the grand jury in view of the Defendant's jury. Furthermore, we find that the administration of such an oath in the presence of the Defendant's jury was not prejudical to the trial of the Defendant in any way. The jury was instructed that the indictment against the Defendant issued by the grand jury was not evidence of the Defendant's guilt. It is presumed that the jury followed the trial court's instructions. <u>State v. Lawson</u>, 695 S.W.2d 202, 204 (Tenn. 1985). This issue has no merit.

We affirm the judgment of the trial court.


_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
JOSEPH B. JONES, Presiding Judge


_____
PAUL G. SUMMERS, Judge