# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 23, 2012

## STATE OF TENNESSEE v. DALTON LISTER

**Appeal from the Criminal Court for Bradley County**
**No. M-05-072    Carroll L. Ross, Judge**

---

**No. E2012-00213-CCA-R3-CD-FILED-JULY 12, 2013**

---

The Defendant, Dalton Lister, was convicted of first degree felony murder; two counts of attempted aggravated robbery, a Class C felony; and conspiracy to commit aggravated robbery, a Class C felony. <u>See</u> Tenn. Code Ann. § 39-12-101, -12-103, -13-202(a)(2), -13-402. The Defendant received an effective sentence of life with the possibility of parole. On appeal, the Defendant contends (1) that the evidence was insufficient to sustain the Defendant's convictions; (2) that the trial court erred by admitting recorded statements made by the Defendant; (3) that the trial court erred by not requiring the State to produce statements made by an investigator pursuant to Tennessee Rule of Criminal Procedure 26.2; and (4) that the trial court erred by not allowing the Defendant to cross-examine a co-defendant regarding the co-defendant's pending charges. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

D. Mitchell Bryant, Athens, Tennessee, for the appellant, Dalton Lister.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Robert Steven Bebb, District Attorney General; and A. Wayne Carter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### PROCEDURAL AND FACTUAL BACKGROUND

*I. Procedural History*

This case has a complex procedural history. The underlining offenses occurred on December 22, 2004. The Defendant and two co-defendants were tried in August 2005. Following his convictions, the Defendant appealed to this court raising the same issues he now raises in this appeal. A panel of this court concluded that the evidence was sufficient to sustain the Defendant's convictions and that he had waived his remaining issues by failing to file a timely motion for new trial. State v. Dalton Lister, No. E2007-00524-CCA-MR3-CD, 2009 WL 1850882, at *1 (Tenn. Crim. App. June 29, 2009), perm. app. denied, (Tenn. Oct. 19, 2009). Our supreme court declined to review this court's decision. The Defendant filed a timely petition for post-conviction relief, and the post-conviction court granted the Defendant a delayed appeal. The Defendant filed a subsequent motion for new trial, which the trial court denied after a brief hearing on January 9, 2012. This appeal followed.

## II. Factual Background Underlying the Defendant's Convictions

A full recitation of the facts of this case may be found in this court's original opinion. See Lister, 2009 WL 1850882, at *1-16. As pertinent to this review, the evidence at trial established that the victims, Julius "K.C." Shapley and Beto Villalobos, came to Tennessee from Texas in December 2004 in order to collect money owed to them by the Defendant and others connected with their marijuana trafficking operation. When the Defendant learned that the victims would be in the state, he began developing a plan with his girlfriend, co-defendant Heather Massengill, and co-defendant Richard Jerger to rob the victims. The Defendant believed that the victims would have money and marijuana with them and would be unarmed because Mr. Shapley was about to begin a prison sentence for a firearms conviction in Texas. The Defendant and co-defendant Massengill made several phone calls in an attempt to procure weapons and people to assist in a robbery. The Defendant instructed co-defendant Jerger to go to the victims' hotel and look for cars with Texas license plates in order to determine which room the victims occupied.

On the day of the attempted robbery, December 22, 2004, the Defendant secured two pistols and got co-defendant Tony Kincaid to agree to assist in the attempted robbery. The Defendant also instructed co-defendant Massengill to purchase bullets for the guns. Co-defendant Massengill arranged to have a local prostitute entertain Mr. Shapley that night. The Defendant came to the back door of the victims' hotel room pretending to be looking for the prostitute. Once inside, the Defendant pulled out a gun and told the victims that he was there to rob them. Co-defendant Kincaid then ran into the hotel room holding a gun with a potato stuck on the end of the barrel to serve as a make-shift silencer. The Defendant told co-defendant Kincaid to shoot Mr. Villalobos. At that point, the victims decided to fight the Defendant and co-defendant Kincaid. Mr. Villalobos struggled with the Defendant while Mr. Shapley fought with co-defendant Kincaid. During the fight, co-defendant Kincaid shot Mr.

Shapley in the stomach. The two men then fled the hotel room and got into a car where co-defendant Jerger had been waiting. Mr. Shapley bled to death in the hotel room.

Based upon the evidence presented at trial, the jury convicted the Defendant of all four counts. Co-Defendant Kincaid was convicted of two counts of attempted aggravated robbery, but the jury could not reach a verdict with respect to the charges of felony murder and conspiracy to commit aggravated robbery. Co-defendant Massengill was convicted of facilitation of felony murder, two counts of facilitation of attempted aggravated robbery, and conspiracy to commit aggravated robbery.

### III. Factual Background Pertinent to this Appeal

Prior to trial, the Defendant filed a motion to compel discovery from the State. In response to that motion approximately a month before the scheduled trial date, the State produced previously undisclosed statements from the Defendant along with other audio recordings. Detective Duff Brumley of the Cleveland Police Department (CPD) testified at a pre-trial hearing that he and another detective spoke with several witnesses and interviewed the Defendant on the night of the offenses. Det. Brumley testified that he and the other detective recorded these conversations using a digital recorder. According to Det. Brumley, he "burned" copies of the recordings onto CDs and gave them to an assistant district attorney that night. Det. Brumley further testified that the recordings were still on the hard drive of his work computer and that after the Defendant filed his motion to compel discovery he was asked if he had any evidence pertaining to the case. Det. Brumley again made copies of the recordings, which were then provided to the attorneys for all of the defendants.

The Defendant then filed a motion to suppress the recordings because they had not been provided to him in a "timely fashion." At a hearing on the suppression motion, Officer Kevin Felton[1] of the CPD testified that he was one of the principal investigators in this case. According to Officer Felton, on the night of the offenses, Det. Brumley gave CDs containing copies of the recorded statements and several cell phones to another detective. The CDs and the cell phones were eventually placed on Officer Felton's desk. Officer Felton testified that he did not realize that he had been given the CDs. However, after Det. Brumley's testimony at the previous hearing, Officer Felton searched his desk and found the CDs. Officer Felton testified that he was embarrassed about not realizing that he had the CDs, so he threw them away in a dumpster outside the police department. The trial court ultimately denied the Defendant's suppression motion.

---

[1]At the time of the hearing Officer Felton held the rank of detective with the CPD.

At trial, Detective Guy Ferguson of the CPD testified that he and Det. Brumley used digital recorders to record statements and conversations. Det. Ferguson testified that they would then "download" the statements onto their computers. Det. Ferguson explained that once the statements were on their computers, they could burn them onto CDs and make "a million copies" if needed. Det. Ferguson testified that the recordings he made in this case were still on his computer. During the trial, Officer Felton repeated his testimony about finding and throwing away the CDs given to him by Det. Brumley. Officer Felton admitted that he did not listen to the CDs before he threw them away, but he testified that they had labels consistent with what Det. Brumley and Det. Ferguson had stated they recorded. Officer Felton testified that as a result of his actions, he had been demoted to a patrol officer.

Prior to cross-examination of Officer Felton, defense counsel for co-defendant Kincaid requested that the State produce Officer Felton's "sworn statements relating" to an investigation by the Tennessee Bureau of Investigation (TBI) into Officer Felton's destruction of the CDs. The trial court denied co-defendant Kincaid's request. Counsel for the Defendant requested "the sworn statements that [Officer Felton had] given in regards to the evidence that was thrown away" prior to her cross-examination of Officer Felton. The Defendant claimed that the statements were Jencks material and were required to be produced. The trial court denied the Defendant's request.

Co-defendant Jerger was severed from the trial and testified as a witness for the State. Co-defendant Jerger testified that he had prior convictions for aggravated burglary, theft, six automobile burglaries, escape, vandalism, and having contraband in jail. Co-defendant Jerger also testified that he faced the same charges as the other defendants, but he claimed that he had not been promised anything by the State and that he was not testifying in hope of getting a reduced sentence. Instead, co-defendant Jerger claimed that he was testifying due to a recent religious conversion and because he felt the need to accept responsibility for his actions. Co-defendant Jerger admitted that he had given three statements to the police which varied in their truthfulness and that he did not mention the plan to rob the victims until he gave his third statement to the police.

On cross-examination, counsel for the Defendant stated that co-defendant Jerger had left out the robbery of a liquor store in Johnson City from the list of his prior convictions. Co-defendant Jerger responded that he had "never been convicted of that." The State then objected, and the jury was removed from the courtroom. Defense counsel explained that co-defendant Jerger had pending charges involving an aggravated robbery in Johnson City and that he was technically a fugitive at that time. A lengthy argument then ensued involving the attorneys for all of the defendants raising various arguments for the admissibility of co-defendant Jerger's pending charges. The trial court ruled that the pending charges were inadmissible reasoning that there was already significant evidence to question co-defendant

Jerger's credibility and that the local district attorney's office could not make a binding plea agreement regarding charges in another district.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions. The Defendant chiefly complains that he was convicted of first degree felony murder while the jury was unable to reach a verdict with respect to co-defendant Kincaid. The Defendant also complains that the witnesses testifying for the State were not credible. A panel of this court has previously determined that the evidence was sufficient to sustain the Defendant's convictions. Lister, No. 2009 WL 1850882, at *17-19. In that opinion, this court noted that we may not reweigh the credibility of witnesses on appeal and that "verdicts as between two or more defendants tried together in a criminal case need not demonstrate rational consistency." Id. at *18 (quoting State v. Hamrick, 688 S.W.2d 477, 481 (Tenn. Crim. App. 1985)).

"[W]hen an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case, which must be followed upon remand." State v. Carter, 114 S.W.3d 895, 902 (Tenn. 2003). An issue decided in a prior appeal may only be reconsidered when (1) the evidence offered on remand was "substantially different" from the evidence in the initial proceeding; (2) the prior ruling was "clearly erroneous" and allowing it to stand would constitute "a manifest injustice"; or (3) the prior ruling is contrary to a change in the controlling law which occurred between the first and second appeal. Id. The Defendant has failed to establish any circumstance warranting reconsideration; therefore, we conclude that this issue is devoid of merit.

### II. Defendant's Recorded Statements

The Defendant contends that the trial court erred by admitting his statements recorded by Dets. Brumley and Ferguson. The Defendant argues that the recordings should have been suppressed because Officer Felton destroyed copies of the statements that had been given to him on CDs the night of the offenses. The Defendant argues that the CDs destroyed by Officer Felton contained the "original" statements and that subsequent "copies" of the statements should have been suppressed pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999). The State responds that no evidence was actually destroyed by Officer Felton because the statements were stored on the computers of Dets. Brumley and Ferguson. The State argues that the CDs destroyed by Officer Felton were only copies of the statements and that the Defendant was eventually provided copies of the statements prior to trial.

In order to ensure a defendant's constitutional right to a fair trial, the State must provide the defendant with exculpatory evidence that is either material to guilt or relevant to punishment. Ferguson, 2 S.W.3d at 915. In situations where evidence that the defendant maintains would have been exculpatory has been lost or destroyed by the State, trial courts must determine whether a trial, conducted without the missing evidence, would be fundamentally fair. Id. at 914. However, Ferguson is not implicated in this case because the trial was not conducted without the missing evidence.

The record belies the Defendant's assertion that Officer Felton destroyed the "original" statements by throwing away the CDs. Dets. Brumley and Ferguson recorded the statements with digital recorders. They then downloaded the statements onto their computers and "burned" copies of the statements onto the CDs given to Officer Felton. The detectives testified that they continued to store the statements on their computers and that they were able to make exact copies of the statements from the files on their computers. These computer files were the "original" source of the statements, and the CDs destroyed by Officer Felton were merely copies of the computer files in a different format. The files were neither altered nor destroyed by Officer Felton's actions. The defendants were ultimately provided copies of the statements from the original files. Despite this, Officer Felton was questioned extensively at trial about his destruction of the CDs and the trial court instructed the jury on the State's duty to preserve evidence. See Ferguson, 2 S.W.3d at 917 n.11. Accordingly, we conclude that this issue is without merit.

### III. Officer Felton's Statements to the TBI

The Defendant contends that the trial court erred by not requiring the State to produce "sworn statements made by Officer Felton to the TBI." The Defendant argues that the State was required to produce these statements upon request pursuant to Tennessee Rule of Criminal Procedure 26.2. Rule 26.2 applies only to written statements that a witness "makes and signs, or otherwise adopts or approves" and "substantially verbatim, contemporaneously recorded recital of the witness's oral statement[s] that [are] contained in a stenographic, mechanical, electrical, or other recording or a transcription of such a statement." Tenn. R. Crim. P. 26.2(g).

The only evidence in the record before us that such statements existed are the claims of defense counsel for the Defendant and co-defendant Kincaid. When a defendant contends that the State has refused to produce a witness's statement as required by Rule 26.2, "the defendant must take action to have the statement included in the record on appeal, or this court has nothing to review." State v. John Lee Benson and Torris Benson, Nos. 67 and 68, 1987 WL 19676, at *4 (Tenn. Crim. App. Nov. 12, 1987), perm. app. denied, (Tenn. Mar. 7, 1988) (citing State v. Robinson, 618 S.W.2d 754, 761 (Tenn. Crim. App. 1981)).

Likewise, "if the excuse for non-production is unavailability . . . the defendant must nevertheless take reasonable steps to secure the statement for the record on appeal," such as requesting a subpoena for the statement. Id. The Defendant has failed to take any such action with regard to the alleged statements made by Officer Felton to the TBI. As such, there is nothing in the record for us to review to determine if the alleged statements existed in the first place, or contained any relevant information. Accordingly, we conclude that this issue is without merit.

*IV. Impeachment of Co-Defendant Jerger*

The Defendant contends that the trial court erred by not allowing him to question co-defendant Jerger about his pending charges relating to an aggravated robbery in Johnson City. The Defendant argues that he should have been allowed to question co-defendant Jerger about these charges in order to impeach him for bias pursuant to Tennessee Rule of Evidence 616.[2] The State responds that the trial court did not err in ruling co-defendant Jerger's pending charges were inadmissible.

The "propriety, scope, manner, and control of cross-examination rests within the sound discretion of the trial court." State v. Schiefelbein, 230 S.W.3d 88, 133 (Tenn. Crim. App. 2007) (citing State v. Hutchison, 898 S.W.2d 161, 172 (Tenn. 1994); State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994)). "Absent a clear abuse of this discretion that results in manifest prejudice to the accused, this court will not interfere with the trial court's exercise of its discretion on matters pertaining to the examination of witnesses." Id. (citing State v. Johnson, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984)).

Tennessee Rule of Evidence 616 provides that a "party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." The right of a defendant to impeach a witness for bias "includes the right to examine a witness regarding any promises of leniency, promises to help the witness, or any other favorable treatment offered to the witness." State v. Sayles, 49 S.W.3d 275, 279 (Tenn. 2001). An undue restriction on this right may violate a defendant's constitutional right to confrontation. Id.

A potential for bias exists when "a witness has a pending criminal charge in the same jurisdiction in which he or she is testifying at trial" due to the possibility that the prosecutor's office would "take favorable testimony into account when subsequently prosecuting the witness's pending charge." State v. Eric James Taylor, alias, No. E2002-00966-CCA-R3-

---

[2]The Defendant limits his argument on appeal solely to the issue of bias; therefore, he has waived review of whether co-defendant Jerger's pending charges would have been admissible via any other evidentiary rule.

CD, 2003 WL 21542464, at *5 (Tenn. Crim. App. July 9, 2003), perm. app. denied, (Tenn. Oct. 6, 2003).  However, a charge pending in a different jurisdiction has "much less relevance as a source of potential bias than if it were pending in the same district as the [d]efendant's charges." Id.

Here, co-defendant Jerger was questioned thoroughly on direct and cross-examination about the fact that he faced the same charges as the other defendants, that the State had not promised him anything in exchange for his testimony, and his motivations for testifying at trial.  The jury was made aware that co-defendant Jerger was involved in an aggravated robbery in Johnson City that he had "never been convicted of."  The jury was also made aware of co-defendant Jerger's lengthy criminal history and the fact that he had lied in repeated statements to the police in this case.  In addition to all of this, the aggravated robbery charge was pending in a different judicial district giving the prosecutors in this case no authority in its disposition.  Therefore, co-defendant Jerger's pending charges in Johnson City had little relevance as a source of potential bias.  Accordingly, we conclude that the trial court did not abuse its discretion in ruling that this evidence was inadmissible.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE