# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs July 13, 2010

## STATE OF TENNESSEE v. DEVON O'NEAL WIGGINS

**Direct Appeal from the Circuit Court for Dyer County**
**No. C06-175    Lee Moore, Judge**

---

**No. W2009-02095-CCA-R3-CD  - Filed March 30, 2011**

---

The Defendant-Appellant, Devon O'Neal Wiggins, was convicted by a Dyer County jury of sale of cocaine over 0.5 grams in a drug-free zone, a Class B felony. He was sentenced as a Range III, persistent offender to twenty years in the Tennessee Department of Correction. The trial court ordered that this sentence be served consecutive to a thirty-year sentence for case number 07-CR-461.[1]  On appeal, Wiggins claims: (1) the insufficiency of the evidence; (2) the jury instructions should have included the offense of sale of a counterfeit controlled substance; (3) the trial court erred by denying his motion for a bifurcated trial; (4) the testimony of an expert witness violated his rights under the Confrontation Clause; (5) his sentence was excessive; (6) the trial court improperly commented on the evidence; (7) the State committed prosecutorial misconduct during its closing argument; and (8) cumulative error. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

James E. Lanier, District Public Defender; H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee, for the Defendant-Appellant, Devon O'Neal Wiggins.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the Appellee, State of Tennessee.

---

[1]The judgment form states that the sentence was also consecutive to the sentence for case number C03-151. At the sentencing hearing, the trial court stated that the sentence was only consecutive to case number 07-CR-461.

# OPINION

**Trial**. As a member of the Narcotics Unit of the Dyersburg Police Department, Sergeant Todd Thayer testified that he had conducted numerous undercover drug purchases. He estimated that the Narcotics Unit averaged between fifty and seventy undercover drug purchases a year, most of which involved crack cocaine.

Sergeant Thayer described an undercover drug purchase involving Wiggins on March 22, 2006. Prior to the purchase, he met with an informant, Kim Pierce, at her apartment. Sergeant Thayer searched the informant for drugs and money. She had no drugs or money in her possession. The informant was then equipped with an audio transmitter, which allowed the police to hear what was going on around the informant. Sergeant Thayer testified that he photographed $80 that would be used for the drug purchase. Sergeant Thayer instructed the informant to call Wiggins and arrange a drug purchase. The informant called Wiggins, and Wiggins agreed to bring cocaine to her apartment building. Sergeant Thayer said this phone call was recorded. The recording was played for the jury.[2] Sergeant Thayer testified that Wiggins did not show up when expected. Consequently, the informant made a second phone call to Wiggins. The second phone call was recorded and played for the jury. The informant was in the process of calling Wiggins a third time when Wiggins was seen approaching the apartment building. Sergeant Thayer said Wiggins was on a bicycle. The informant met Wiggins outside at the front of her apartment building. Sergeant Thayer was not in a position where he could see the interaction between the informant and Wiggins. He was able to hear what was going on through the audio transmitter. The informant and Wiggins met for around thirty or forty-five seconds. Sergeant Thayer said the conversation was brief.

Sergeant Thayer testified that Wiggins was arrested immediately after the purchase. Wiggins was searched, and the police found more than $100 in cash. Sergeant Thayer said he compared the serial numbers for the $80 that was photographed before the purchase against the cash recovered from Wiggins. Sergeant Thayer testified that Wiggins possessed the $80 that was photographed. Sergeant Thayer said the informant was also searched. She turned over the purchased substance to the police. Sergeant Thayer described the substance as being rocky and off-white. He testified that the substance appeared to be crack cocaine. Sergeant Thayer said the informant was paid $70 for her assistance with the drug purchase. Her payment was not dependent on the outcome of this case. Sergeant Thayer said the informant did not receive any leniency with her own pending charges. Sergeant Thayer testified that he measured the distance between the apartment building and a nearby daycare. Using a measuring wheel, he determined that 888 feet separated the two locations. Sergeant

---

[2]The phone recordings are not included in the record.

Thayer described how the measuring wheel operated: "It's a . . . wheel that as you roll it down the road, it just clicks off feet[.]"

On cross-examination, Sergeant Thayer testified that the informant had been involved with twenty to thirty undercover drug purchases. He said the informant also received $25 for appearing in court and $25 for travel expenses. Sergeant Thayer acknowledged that he took no steps to verify the accuracy of the measuring wheel.

The informant testified that she assisted the Dyersburg Police Department with the undercover drug purchase. She acknowledged that she was paid for her work with the police. The informant said she had pending charges at the time of the undercover drug purchase. She denied expecting or receiving any leniency with the pending charges. The informant stated that she had worked with the police department on five or six cases.

The informant testified that the undercover drug purchase occurred on March 22, 2006. She informed the police that she could purchase drugs from Wiggins. The informant stated that prior to the purchase, she was searched by the police in her apartment. At police instruction, she called Wiggins by phone and requested $80 worth of crack cocaine. The informant said the police gave her $80 in cash. She called Wiggins again after he initially failed to show up at her apartment building. The informant stated that Wiggins arrived a few minutes after the second phone call. Wiggins came by bicycle. The informant walked down the stairs of her apartment building and met with Wiggins. She handed Wiggins $80, and she was given what appeared to be crack cocaine. The informant said the purchase occurred on the porch of her apartment building. Wiggins was arrested immediately after the purchase. The police retrieved the purchased substance from the informant, and she was searched a second time. She said she was paid $70 for her work on the undercover drug purchase. The informant also received $25 for showing up to testify and $25 for travel expenses. She stated that her pay was not dependent on the outcome of the case.

On cross-examination, the informant denied having a sexual relationship with Wiggins. Defense counsel asked her about a prior occasion in which she admitted to having a sexual relationship with Wiggins. The informant stated, "I don't remember that. I mean back then I used drugs[.]" The informant admitted that she had numerous convictions for theft and shoplifting. She also had prior convictions for criminal impersonation and attempt to commit theft. The informant acknowledged that she was paid $100 for past court appearances. She said she was not strip-searched before or after the purchase.

Investigator Thomas Langford of the Dyersburg Police Department testified that he assisted with the undercover drug purchase. He estimated that he had worked on one hundred undercover drug purchases. Investigator Langford said the informant was searched

prior to the purchase. He was present when the informant called Wiggins by phone. Investigator Langford testified that he did not witness the purchase; however, he was able to listen to the informant's conversation with Wiggins. He said the conversation lasted only "a matter of seconds." After the purchase was made, Investigator Langford met the informant in the stairwell of the apartment building and recovered the crack cocaine. He gave the substance to Agent Mark Reynolds who placed it into evidence. Investigator Langford was not involved in measuring the distance between the apartment building and the daycare.

A forensic scientist for the Tennessee Bureau of Investigation (TBI) analyzed the rock-like substance recovered from the informant. She conducted two tests to determine if the substance was cocaine. She first performed a presumptive test, which looks at the coloration of the substance. The results of the presumptive test showed that the substance was cocaine. The forensic scientist then conducted a Gas Chromatograph Mass Spectrometer analysis. She gave the following description for this second testing procedure:

> You dissolve a small portion of the sample in some methanol and it's injected into the instrument. The instrument does its thing. You get a print-out and you compare that print-out to . . . a known standard of cocaine and if they match then you know that's a positive test for that substance.

The forensic scientist testified that this testing procedure has been subject to peer review and is generally accepted within the scientific community. She determined that the substance "contained 1.2 grams of a substance that contains cocaine." The forensic scientist acknowledged that the TBI did not prepare the graph representing the known standard of cocaine ("the exemplar graph"). She said the exemplar graph was purchased from an unidentified company. The forensic scientist did state, however, that her office verified the results of the exemplar graph by looking to a reference book. The forensic scientist stated that she did not personally compare the exemplar graph to the reference book.

The State rested, and the defense did not offer any proof. The jury convicted Wiggins of sale of cocaine over 0.5 grams in a drug-free zone.

**Sentencing**. A sentencing hearing was held during which an Investigation Report from the Tennessee Board of Probation and Parole was introduced as an exhibit. The report shows that Wiggins has an extensive criminal record, including at least six prior convictions for Class B or C felonies. The defense conceded that Wiggins qualified as a Range III offender. Wiggins was on bond when he committed the offense in the present matter. A record clerk from Dyer County examined a copy of Wiggins's bond in case number 07-CR-461. The record clerk testified that the bond was dated November 1, 2005, and Wiggins was

arrested for those offenses on October 27, 2005. The Deputy Clerk for the Dyer County Circuit Court testified and examined the indictment for case number 07-CR-461. She stated that Wiggins was indicted for five offenses, which were committed on October 27, 2005. She confirmed that Wiggins was convicted of all of these offenses on January 17, 2008.

The trial court determined that Wiggins was a Range III offender based on his prior convictions. It stated that the sentencing range for the convicted offense was between twenty and thirty years. The trial court imposed the minimum sentence of twenty years. The trial court found that Wiggins was on bond when he committed the present offense. Consequently, the trial court stated that it was obligated by statute to run the twenty-year sentence consecutive to the sentence for case number 07-CR-461.

After sentencing, Wiggins filed a motion for new trial. The trial court denied this motion. Wiggins filed a timely notice of appeal.

## ANALYSIS

**I. Sufficiency of the Evidence**. Wiggins claims the evidence did not support his conviction for sale of cocaine over 0.5 grams in a drug-free zone. Specifically, Wiggins contends that the evidence did not establish that the apartment building was within 1000 feet of the daycare. In support of this issue, he argues that Sergeant Thayer's measurement was not credible because Sergeant Thayer did not know specific information about the measuring wheel. Secondly, Wiggins claims that the evidence did not prove that the purchased substance was cocaine. He argues the forensic scientist's testimony was not credible because of discrepancies between the exemplar graph and the tested substance. In response, the State asserts that a rational juror could have found that the elements of the offense were met. It refers to Sergeant Thayer's testimony that the drug purchase took place 888 feet from the daycare. The State also points to the forensic scientist's testimony that the purchased substance was cocaine. Upon review, we conclude that the evidence was sufficient to support the conviction.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a

-5-

reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Wiggins was convicted under Tennessee Code Annotated section 39-17-417. This statute prohibits the knowing sale of a controlled substance. T.C.A. § 39-17-417(a)(3). Under subsection (c), the sale of more than 0.5 grams of cocaine is a Class B felony. T.C.A. § 39-17-417(c); see also T.C.A. § 39-17-408(b)(4) (identifying cocaine as a controlled substance). The Tennessee Code imposes enhanced criminal penalties for drug sales that occur within 1000 feet of drug-free zones, which include child-care agencies. See T.C.A. § 39-17-432.

In this case, the evidence supports the conviction. The informant telephoned Wiggins and arranged to purchase $80 worth of crack cocaine. Sergeant Thayer provided the informant with $80 of previously photographed money to make the purchase. The informant testified that Wiggins came to her apartment building and handed her a substance in exchange for the same $80. Several witnesses testified that Wiggins was arrested and searched immediately after the exchange. Sergeant Thayer stated that the search uncovered more than $100 in cash. After comparing the serial numbers for the money that was recovered from Wiggins, Sergeant Thayer confirmed that Wiggins possessed the $80 of previously marked money provided to the informant. Investigator Langford met the informant in the stairwell of the apartment building and retrieved the purchased substance. A TBI forensic scientist determined that the substance contained 1.2 grams of cocaine. The forensic scientist further stated that the testing procedure was subject to peer review and was generally accepted within the scientific community. Sergeant Thayer testified that he used a measuring wheel to ascertain the distance between the apartment building and the daycare. He determined that 888 feet separated the two locations. Sergeant Thayer said the measuring

-6-

wheel, which he described as being "relatively self-explanatory," was used by the police department for taking such measurements. Based on the foregoing testimony, a reasonable juror could have found the essential elements of the crime beyond a reasonable doubt. Wiggins is not entitled to relief on this issue.

**II. Jury Charge**. Wiggins claims the trial court erred in denying his motion that the jury be instructed on the offense of sale of a counterfeit controlled substance. He acknowledges that this offense is not a lesser included offense of sale of a controlled substance. Wiggins argues, however, that the facts of this case merited an instruction. He claims the denial of his request violated his constitutional right to a complete jury charge. The State contends that the trial court properly denied Wiggins's motion because sale of a counterfeit controlled substance is not a lesser included offense of the charged offense. Upon review, we agree with the State.

A defendant has a "'constitutional right to a correct and complete charge of the law.'" State v. Litton, 161 S.W.3d 447, 458 (Tenn. Crim. App. 2004) (quoting State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), superseded by statute on other grounds as stated in State v. Reid, 91 S.W.3d 247, 291 (Tenn. 2002)). Accordingly, a trial court has a duty to give "a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (quoting State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987) (citation omitted); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

Upon request, a trial court is required under certain circumstances to charge the jury on lesser included offenses. See T.C.A. § 40-18-110(a). This court has held, however, that a trial court is under no duty to instruct the jury when the requested charge is not a lesser included offense. See State v. Harold Holloway, No. E2004-00882-CCA-R3-CD, 2005 WL 1981791, at *10 (Tenn. Crim. App., at Knoxville, Aug. 16, 2005); State v. Reginald Merriweather, Nos. W1999-02050-CCA-R3-CD, W2001-02206-CCA-RM-CD, 2002 WL 1482742, at *12 (Tenn. Crim. App., at Jackson, Feb. 11, 2002). Here, Wiggins was not indicted for the requested charge, and it is not a lesser-included offense of any of the charged offenses. The trial court was under no duty to charge the jury on the offense of selling a counterfeit controlled substance. Therefore, the trial court did not err in denying Wiggins's request.

**III. Bifurcated Trial**. Wiggins claims the trial court erred in denying his motion to bifurcate his trial. He moved the court to separate the issue of whether he sold cocaine from the issue of whether the sale occurred within 1000 feet of the daycare. Wiggins asserts that

the denial of his motion prevented him from raising a defense based on entrapment. His brief contains the following argument:

> Said actions on the part of the police in luring the defendant inside the one thousand feet (1,000') drug free zone certainly triggered the defendant's right to argue entrapment pursuant to [State v. Charles Lincoln Faulkner, No. E2006-02094-CCA-R3-CD, 2008 WL 2242531 (Tenn. Crim. App., at Knoxville, June 2, 2008)]. The defendant, further, had numerous drug sale convictions on his record that did not occur in a drug free zone which, if his trial had been bifurcated, he could have safely presented to the jury, if he was convicted of the sale, as propensity evidence supporting a defense of entrapment regarding the issue of the drug free zone. In denying the bifurcation and as such thwarting the defendant's entrapment defense, the trial court effectively denied defendant's constitutional right to present a defense pursuant to [Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038 (1973)].

In response, the State claims Wiggins waived this issue by failing to present an adequate record for review. The State also argues that Wiggins did not prove he was entitled to a bifurcated trial.

We agree with the State that Wiggins failed to present an adequate record for review. During pre-trial proceedings, defense counsel made an oral motion for a bifurcated trial. The trial court made clear that it had previously denied the motion. It stated, without additional comment, "I denied it before; I'm denying it today." The record does not contain a transcript of the prior hearing or the trial court's initial findings. Wiggins was responsible for providing a record that conveys a fair, accurate, and complete account of what transpired with regard to his motion. See T.R.A.P. 24(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). The Tennessee Supreme Court has stated, "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993) (citing State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988)). We are to presume the trial court's findings are correct if a relevant transcript is not included in the record. See State v. Ivy, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Here, the record is incomplete because it does not include a transcript of the prior hearing or the trial court's initial findings. Consequently, this issue is waived.

**IV. Confrontation Clause**. Wiggins claims the forensic scientist's testimony regarding the exemplar graph violated his right of confrontation under the Sixth Amendment,

as incorporated under the Fourteenth Amendment. Wiggins argues that he had a right to confront the person who created the exemplar graph because it was used by the forensic scientist in forming her opinion. In response, the State contends the trial court properly determined that the Confrontation Clause was not implicated by the forensic scientist's testimony.

Wiggins raised this identical argument on appeal in a separate case. State v. Devon O'Neal Wiggins, No. W2008-01078-CCA-R3-CD, 2010 WL 2516871, at *4-5 (Tenn. Crim. App., at Jackson, June 22, 2010). This court conducted a thorough review of the issue, and determined that the issue was without merit. Id. Based on the reasoning set forth in that opinion, we again hold that the forensic scientist's reliance on the exemplar graph did not violate Wiggins's right to confrontation. He is not entitled to relief on this issue.

**V.** **Sentencing**. Wiggins claims his sentence constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article I, Section 16 of the Tennessee Constitution. He was ordered to serve his twenty-year sentence consecutive to a thirty-year sentence in a separate drug case. Wiggins does not challenge specific findings of the trial court; however, he claims, "An effective fifty (50) year sentence for selling a small amount of cocaine is cruel and unusual[.]" The State argues that the trial court did not err in sentencing Wiggins. The State contends that the trial court imposed the minimum punishment under the law.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Our review is de novo, without a presumption of correctness, if the trial court applied inappropriate mitigating or enhancement factors or otherwise failed to follow the principles of the Sentencing Act. State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Commission Comments.

Wiggins was convicted of sale of cocaine over 0.5 grams in a drug-free zone, a Class B felony. The trial court found that Wiggins qualified as a Range III, persistent offender based on his extensive criminal history. See T.C.A. § 40-35-107. It determined that the sentencing range for the Class B felony was between twenty and thirty years. T.C.A. § 40-35-112(c)(2). Wiggins was sentenced to the minimum term of twenty years. Because the offense occurred within 1000 feet of a drug-free zone, Wiggins was required to serve the

entirety of his sentence. T.C.A. § 39-17-432(c). The trial court also found that Wiggins committed the offense while on bond for case number 07-CR-461. As a result, it ordered the twenty-year sentence to run consecutive to the thirty-year sentence for case number 07-CR-461.

In viewing the record, Wiggins did not receive an excessive sentence. Wiggins qualified as a Range III, persistent offender because he was convicted of six prior Class B or C felonies.[3] See T.C.A. § 40-35-107(a)(1). As a Range III offender, the sentencing range for sale of more than 0.5 grams of cocaine, a Class B felony, was between twenty and thirty years. Id. §§ 39-17-417(c)(1), 40-35-112(c)(2). Wiggins received the minimum sentence within this range. We note that the offense was technically a Class A felony because the sale occurred within 1000 feet of a drug-free zone. Section 39-17-432(b)(1) mandates that drug sales occurring within 1000 feet of child care agencies shall be punished one classification higher than otherwise provided. Id. § 39-17-432(b)(1). The heightened classification, however, did not subject Wiggins to additional incarceration. Id. § 39-17-432(b)(3) (stating that defendants are only subject to additional fines for drug sales occurring within 1000 feet of child care centers); State v. Calvin Eugene Bryant, Jr., No. M2009-01718-CCA-R3-CD, 2010 WL 4324287, at *5 (Tenn. Crim. App., at Nashville, Nov. 1, 2010). Accordingly, the trial court did not err by sentencing Wiggins within the applicable sentencing range.

In addition, the trial court properly determined that Wiggins's sentence was to be served consecutive to his sentence for case number 07-CR-461. Section 40-20-111(b) provides:

> In any case in which a defendant commits a felony while the defendant was released on bail in accordance with the provisions of chapter 11, part 1 of this title, and the defendant is convicted of both offenses, the trial judge shall not have discretion as to whether the sentences shall run concurrently or cumulatively, but shall order that the sentences be served cumulatively.

See also Tenn. R. Crim. P. 32(c)(3)(C); State v. Hastings, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). Here, the State presented evidence that Wiggins was on bond for case number 07-CR-461 when he committed the present offense. Therefore, the trial court was required to impose consecutive sentencing. We recognize that Wiggins received a lengthy sentence;

---

[3]At the sentencing hearing, defense counsel informed the trial court that two of the prior offenses occurred within the same twenty-four hour period, and therefore they constituted a single offense for purposes of the sentencing range. Defense counsel acknowledged that this fact did not affect Wiggins's status as a Range III, persistent offender under section 40-35-107(a)(1).

however, based on his prior convictions, we do not believe that it constituted cruel and unusual punishment.  He is not entitled to relief on this issue.

**VI. <u>Comment by Trial Court</u>**.  Wiggins argues that the trial court improperly commented on the evidence in front of the jury.  Before the jury left the courtroom to deliberate, the trial court stated, "You will take all the exhibits with you except the drugs. . . .  If you want to see the drugs you can come out here and look but we can't let you take the drugs back into the jury room."  Wiggins argues that these comments undermined his primary defense that the alleged contraband was not cocaine.  The State claims Wiggins failed to show that the comments constituted reversible error.

The Tennessee Constitution prohibits the trial court from commenting on the evidence in a case.  Tenn. Const. art. VI, § 9 ("The judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law.").  A new trial will only be granted, however, if the trial court's comments were prejudicial to the defense.  <u>Mercer v. Vanderbilt Univ., Inc.</u>, 134 S.W.3d 121, 134 (Tenn. 2004).  The comments are assessed within the overall context of the case to determine whether they were prejudicial, or merely harmless error.  <u>Id.</u> (citing <u>State v. Caughron</u>, 855 S.W.2d 526, 536-37 (Tenn. 1993)).

In viewing the record, the trial court's comments do not amount to reversible error.  We recognize that the trial court improperly referred to the exhibit as "drugs."  The content of the alleged contraband was a contested issue at trial.  This error did not, however, sufficiently prejudice Wiggins's defense.  The trial court made the comments in the context of explaining what exhibits could be taken to the jury room.  Upon the immediate objection by defense counsel, the trial court clarified that the exhibits were the "alleged drugs."  The trial court's error simply did not rise to the level of prejudice that would require granting a new trial.  Wiggins is not entitled to relief on this issue.

**VII. <u>Closing Argument</u>**.  Wiggins claims the State committed prosecutorial misconduct during its closing argument.  He argues that the State violated his constitutional right not to testify by focusing on his failure to present particular evidence.  Wiggins also contends that the State tried to shift the burden of proof to the defense.  In response, the State argues that its remarks were not improper, and that Wiggins failed to establish prejudice.  Upon review, we agree with the State.

Arguments directed at a defendant's failure to testify are improper under the Fifth Amendment.  <u>Griffin v. California</u>, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233 (1965).  However, "prosecutorial misconduct does not amount to reversible error absent a showing that it has affected the outcome to the prejudice of the defendant."  <u>State v. Bane</u>, 57 S.W.3d 411, 425 (Tenn. 2001) (citing <u>Terry v. State</u>, 46 S.W.3d 147, 156 (Tenn. 2001)).  In order to

be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996) (citing Harrington v. State, 385 S.W.2d 758, 759 (1965)).

Here, Wiggins's brief refers to over a dozen remarks made by the State. However, Wiggins objected one time during the closing argument. This objection came after the State made the following argument:

> I don't know how to describe this [as] anything other than a rage against the machine. That's what the defendant wants to do is convince you that the machine is in error. He doesn't have any proof of it. He hasn't submitted any proof of it despite the fact that the . . . [forensic scientist] said, you know, we're required to save at least half the sample so that if they want to have it tested by someone else that they can do that. They can take it to a completely different lab and have it tested if they really don't think it's cocaine. . . . If you'll remember I asked her, do you remember any kind of request of that sort? No. Did you hear another expert today say I tested another sample and it wasn't cocaine? No, you didn't hear that. All you heard was the defendant raging against the machine.
>
> He also raged against the other little wheel, but if you'll remember–

A bench conference was held to address Wiggins's objection. Defense counsel informed the trial court that Wiggins did not testify. The State explained that its remarks were directed at the arguments of defense counsel, and not Wiggins's failure to testify. The trial court overruled the objection.

In viewing the closing argument, the State's remarks were not improper. The comments quoted above targeted Wiggins's failure to contradict the State's proof about whether the alleged contraband was cocaine. Later in the closing argument, the State also commented that Wiggins did not rebut the State's proof that the drug purchase occurred within 1000 feet of the daycare.[4] The Tennessee Supreme Court has stated, "It has long been established that a district attorney general may argue that the state's evidence is uncontradicted." State v. Thornton, 10 S.W.3d 229, 235 (Tenn. 1999) (citing State v. Rice, 638 S.W.2d 424, 427 (Tenn. Crim. App. 1982)). The State's remarks were not directed at

---

[4]Wiggins also refers to these comments in his brief. Defense counsel did not object to these remarks as required by Rule 36(a) of the Tennessee Rules of Appellate Procedure. Failure to comply with this basic rule ordinarily constitutes a waiver on this issue.

Wiggins' failure to testify, as someone other than Wiggins could have testified about whether the substance was cocaine or whether the distance to the daycare exceeded 1000 feet. Additionally, the State's remarks did not shift the burden of proof to the defense. Wiggins is not entitled to relief on this issue.

**VIII.  Cumulative Error**.  Wiggins claims his conviction must be reversed based on the cumulative effect of the alleged errors.  The State argues that reversal is not required because Wiggins failed to establish any error affecting the outcome of the judgment.  We agree with the State.  Because we have already determined that Wiggins is not entitled to relief on any of the previous issues, we conclude that there is no cumulative error that affected his right to a fair trial.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE